BEYMER BAUMAN LEAD CO. *vs.* JAMES H. HAYNES and others.

Penobscot.   Opinion December 8, 1888.

*Contract.   "Protect and Guarantee."*

An agreement by a manufacturer and seller of white lead "to protect and guarantee" a customer on lead, means that the manufacturer will supply the article to his customer as low as the most favorable market price at the time of delivery.  Sales or offers exceptionally low for special reasons, not representing fair market price, would not govern.

ON REPORT.  After the evidence was out the action was withdrawn from the jury and reported to the law court.  The full court were to render such decision as the legal rights of the parties require, from the admissible evidence, being invested with jury powers, &c.

The case appears in the opinion.

*Lewis Barker*, *T. W. Vose and L. A. Barker*, for defendants.

The defendants claim that the plaintiffs agreed, by the telegram and letter in reply, to furnish them what white lead they might order for the season's trade, for 5½ cents per lb., less 2½ per cent. in 60 days; and for less, if the defendants could buy of responsible parties for less.   Defendants thereby agreed to take the season's lead of them.

Plaintiffs' interpretation of "protection and guaranty"—meaning that in no case shall the purchaser pay more than the price fixed upon—is little more than a play upon the words, since

every other corroder might sell for less, and defendants being bound to take the season's lead of the plaintiffs, must pay their price.

The defendants, wholly on account of plaintiffs' failure to fill their orders, paid out for lead in the market, and freight, $60.43 more than the contract price with plaintiffs,' and hence is a legitimate charge in offset to plaintiffs' bill.

Upon the question of usage, counsel cited *Jones* v. *Hoey*, 128 Mass. 585.

*Charles H. Bartlett*, for plaintiffs.

The first contract was that the plaintiffs should sell the defendants lead at the lowest price *their own* lead reached, up to the time when their agent should arrive.

If the defendants, as they claim, were to have the benefit of the protection and guaranty for the whole season, what was the need of having the plaintiff's agent call on them? Suppose the agent had come, would the defendants been bound to buy lead of him or his concern?

They made no objections to the price and terms specified in the different invoices, on all of which it plainly appears that the $2\frac{1}{2}$ per cent. cash discount was at the end of *fifteen days.*

It was not the event of the agent's coming which was the important thing, it was time which was thereby fixed. The defendants lost nothing by failure of the agent to come. The plaintiffs immediately corresponded with them in regard to the sale of the lead, and the defendants made no objection that the agent did not come. The prices charged are the lowest in the market for the season. All the witnesses testify that the sixty days refers to the time when the bill must be paid, and the discount is connected with the fifteen days.

.The other lead was not sent because the defendants furnished no specifications for more than 9,500 pounds, and because they did not pay the first invoice when due, and were already claiming damages for delay.

PETERS, C. J.    There are differences between the parties as to the construction of certain correspondence between them con-

cerning the sale and delivery of amounts of white lead, and a resort was had to the testimony of experts in the trade to ascertain the meaning of certain short expressions and abbreviations in the correspondence which would not explain themselves.

The defendants expecting the arrival of the plaintiffs' agent, with whom they were to make more definite terms, telegraphed the plaintiffs in these words, "Will you protect and guarantee us on lead until your agent gets here? we are offered inducements." The answer was "yes."

The plaintiffs contend that this meant that, until other arrangement should be personally made by the agent, the lead forwarded should be priced as cheaply as the same article was sold by them to any one else, while the defendants' construction is that the price should be as low as any other party would have sold the same thing to them. We are satisfied that the meaning of the expression was that the plaintiffs would sell as low as the most favorable market price at the time. Other sales or offers which were exceptionally low for special reasons, not representing or reflecting fair market price, would not govern. Offers have not the force of sales. We are further satisfied that plaintiffs' prices were not an overcharge, but fair and reasonably low.

There is a difference as to how long the contract before named would continue in case the agent did not arrive according to the anticipation of the parties. He failed to go to Bangor where the defendants resided. We see no materiality in this minor issue, discussed on briefs of counsel, inasmuch as the parties, in the absence of the agent, settled the terms of the contract by letters between themselves.

But the meaning of this, lastly made contract, is in contention. The defendants contend that the bargain was for lead "$5\frac{1}{2}$, less $2\frac{1}{2}$, 60 days," or, in other words, that the lead was to be $5\frac{1}{2}$ cents per pound, with $2\frac{1}{2}$ per cent. discount on the price if paid in 60 days, with interest after that time; while the plaintiffs more correctly contend, we think, from the testimony of the business experts, that the contract was $5\frac{1}{2}$ cents per pound, with $2\frac{1}{2}$ per cent. discount if paid in fifteen days, otherwise in 60 days without discount.

In our opinion, after careful scrutiny of the rather uncertain and indefinite evidence, on the question of damages, the defendants had some cause of complaint for tardy deliveries that caused them some additional expense in the business, which, as nearly as the same can be estimated or computed, should reduce plaintiffs' claim from $65 to $30. Judgment for that amount to be entered for plaintiffs.

*Judgment for plaintiffs.*

DANFORTH, LIBBEY, EMERY, FOSTER and HASKELL, JJ., concurred.