WING and others, Respondents, vs. WADHAMS OIL & GREASE COMPANY, Appellant.

*March 23 — April 12, 1898.*

*Contract of sale: Construction of terms.*

A provision in a contract for the sale of goods to be delivered at different times, that "if, during the deliveries on this contract, the price should be below the price herein named, we agree to rebate such difference on deliveries so affected," is to be construed as meaning by the words "the price," when first used, "the market price."

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Affirmed.*

For the appellant there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas,* and oral argument by *F. C. Winkler.*

For the respondents there was a brief by *Tarrant, Kronshage, McGovern & Dielmann,* and oral argument by *Theodore Kronshage.*

CASSODAY, C. J.   During the times mentioned, the plaintiffs were copartners doing business in New York, and the defendant was a Wisconsin corporation, doing business in Milwaukee. This action was commenced October 6, 1896, to recover $508.28, with interest from November 20, 1895, for certain goods sold and delivered by the plaintiffs to the

defendant upon an express written contract entered into, after some correspondence between the parties, September 13, 1894, to the effect that the plaintiffs had on that day sold to the defendant " 600 drums of 'solvay,' seventy per cent. and, or seventy-four per cent. caustic soda for delivery, fifty drums per month, January to December, 1895, both inclusive; price 1.80 cents per pound for sixty per cent., delivered in Milwaukee, invoice weights and tares. Terms cash within sixty days from date of each delivery, or less one per cent. for prompt cash, sellers' option. . . . Each delivery to be treated as a separate sale. If during the deliveries on this contract *the price* should be below *the price* herein named, we agree to rebate such difference on deliveries so affected." The defendant answered by way of admissions, denials, and counter allegations, and a counterclaim for $800 by way of rebates for excessive price charged by the plaintiffs, under the last clause of the contract quoted. The cause was thereupon referred to a referee to hear, try, and determine, and at the close of the trial thereof the referee reported his findings of fact and conclusions of law, which, after being modified by the court, were, in addition to the facts stated, to the effect that, prior to November 20, 1895, the plaintiffs delivered to the defendant all the caustic soda mentioned in the contract, and the defendant received the same and paid therefor, except a balance on the last shipment of $508.28; that at no time during the deliveries on the contract was the market price of caustic soda below the price therein named; that by order of the court such report of the referee, so modified, was confirmed, and judgment thereon ordered in favor of the plaintiffs for $508.28, with interest from November 20, 1895, and costs. From the judgment entered thereon accordingly the defendant brings this appeal.

It is contended that the defendant is entitled to a rebate by virtue of the stipulation in the contract, because the plaintiffs, September 15, 1894, made a contract with B. J.

Johnson & Co. of Milwaukee, similar to the contract with the defendant, except that the plaintiffs were to supply their "entire consumption of caustic soda from Feb. 1 to Dec. 31, 1895, . . . taking the goods in not less than car-load lots," upon thirty days' notice to the plaintiffs; "price 1.75 per pound for sixty per cent., delivered in Milwaukee;" provided that "if, during the deliveries on this contract, our [the plaintiffs'] price should be below price herein named, we are to rebate such difference on all deliveries so affected." As a matter of fact, the written contract which the plaintiffs at first proposed to make with the defendant contained, in the clause for a rebate, the same words, "our price," as in the Johnson contract, but September 15, 1894, the defendant returned the same to the plaintiffs, with the word "our" stricken out, and the word "the" put in its place; and the plaintiffs consented to such modification. It is true, as contended by the defendant, that, if the contract had remained as originally written, there could be no contention that the words "our price" meant the market price. Counsel insist that the defendant suggested the change so as to protect it "not only against prices which might be made by the plaintiffs, but by any one else as well." If that was the purpose, apt words should have been employed to secure that purpose. The words "the price," as used, naturally refer to some known or ascertainable price — some standard of value. The word "price" is defined as "the sum or amount of money, or its equivalent, which a seller asks or obtains for goods in market." "The exchangeable value of a commodity." Cent. Dict. "The amount at which a commodity is valued or sold in the market. The market price,— as the price of wheat." Standard Dict.

To say that the term "the price," as used in the contract, is not the market price, but some specific price, though secret and unknown to any person except the contracting parties, is to distort its ordinary meaning. We must hold that, as

used in the contract, it means the market price.   With this construction, it is, in effect, conceded that the defendant made no case for a rebate, and hence took nothing by its counterclaim.

*By the Court.*— The judgment of the superior court of Milwaukee county is affirmed.