[No. 13745.  Department One.  March 26, 1917.]

DAN McGARRY, *Respondent*, v. SUPERIOR PORTLAND CEMENT
COMPANY, *Appellant*, UNITED STATES FIDELITY &
GUARANTY COMPANY, *Respondent*, R. O.
HOFFMAN *et al., Defendants.*[1]

SALES—CONTRACT—CONSTRUCTION—REBATE. Upon a sale of cement at $1.90 per barrel, for highway work on King county roads, by the terms of which the buyer was to have a rebate in case the market price fell or if the seller quoted a lesser price during the life of the contract, the buyer was entitled to the rebate where the seller thereafter quoted a price of $1.75 to King county for work on county roads and bridges.

SAME—CONTRACT—"MARKET PRICE." In such a case, the quotation of $1.75 per barrel to the county is some evidence, and sufficient under all the circumstances, to show the "market price," which implies price or value in an open market, as shown by buying and selling, notwithstanding that some witnesses testified that the market price remained at $1.90.

SAME—CONTRACT FOR REBATE—CONSTRUCTION. In such a case, it is immaterial that the price quoted to the county was not intended to be retroactive or applied to past county contracts, since by the terms of the contract of sale any cut in the price during the life of the contract was made retroactive upon the terms of the contract and entitled the buyer to the rebate.

Appeal from a judgment of the superior court for King county, French J., entered May 13, 1916, upon findings in favor of the plaintiff, in an action to determine the extent and validity of claims filed against a contractor's bond, tried to the court.  Affirmed.

*Bronson, Robinson & Jones,* for appellant.

*J. L. Corrigan,* for respondents.

CHADWICK, J. — Respondent McGarry is a contractor. On the 24th day of May, 1915, he entered into a contract for the improvement of Permanent Highway Number Ten, in King county.  The United States Fidelity & Guaranty

[1]Reported in 163 Pac. 928.

Company is surety upon his bond.   Several claims were filed against the bond.   This action was instituted by McGarry to have adjudicated the extent and validity of the several claims.

Appellant, the Superior Portland Cement Company, filed a claim of $1,911.50.   Respondent alleges that there is no more than $667.70 due on this claim.   The position of the appellant and the contention of the respondent are fairly stated by their respective counsel.

"Mr. Jones:   Now, I think there is no dispute, your Honor please, between plaintiff and ourselves except on this one point.   We claim that we made a contract with him to supply him with cement at $1.90 a barrel, and that he was to have a rebate or reduction *if the market price fell below that.* He claims he was to have a rebate or reduction *if any sales were made or any prices quoted* to anyone whomsoever corresponding to the amount of the reduction.   That is correct, isn't it, Mr. Corrigan.

"Mr. Corrigan:   That is substantially correct.   .   .   . My idea of this contract is simply this:   The plaintiff alleges he made this contract with the defendant Superior Portland Cement Company to take this cement at a dollar and ninety a barrel, with this stipulation added, that in case *they quoted a less price* to any other contractor or concern, or agreed to furnish cement at a less price to any other contractor or concern, or agreed to furnish cement at a less price, that the plaintiff would have a rebate of a corresponding amount, provided this reduction was made during the time deliveries were being made on this work."

The contract between respondent and appellant was oral. It will be seen that the parties now disagree, the one saying that if the market price of cement fell below the quoted price, and the other saying if a lesser price was quoted, appellant was to have a rebate.   After the contract had been entered into, appellant issued a letter addressed to the commissioners of King county.

"Confirming advice given you by our Mr. Sutherland on the terms of sale of cement to the county, to be used for county roads and bridges, the $1.75 net delivered price will

apply only to points on the Great Northern and Northern Pacific to which the 5c rate applies from Concrete and Bellingham.

"There will be no objection to shipping cement to the contractor whenever your Honorable Board direct us to, but it must be understood that the cement will be invoiced to the county, and must be paid for by the county."

Thereupon the board of county commissioners issued a notice to contractors:

"Notice to Contractors Regarding Cement

"King county will furnish cement to successful bidder at the rate of one dollar and seventy-five cents ($1.75) per barrel, delivered in carload lots of not less than one hundred and thirty-two (132) barrels. . . .

"Shipments from the factory will in all cases be not less than minimum carload lots. Smaller shipments may be had from the Seattle warehouses *at regular prices.*

"King county purchases cement at the above named prices under contract, for its own use, and any cement sold to its contractors is to be used on King county work only. Failure on the part of the contractor to conform to the above conditions will be considered grounds for the county to refuse to furnish the contractor with any more cement, and the county will so do and compel the contractor to buy the balance of the cement needed to complete the contract *in the open market.*"

The court held this to be a quotation of a lower price, and that respondent was entitled to a rebate. We think the decision of the court is clearly right. While much of the oral argument was taken up by a discussion of the meaning of market price, the theory of appellant may be adopted and we may still hold that the offer of appellant was, in effect, a cut in the market price. The words "market price" have no hard and fast meaning. There is no magic in the term. When it becomes a subject of legal controversy, it will be given that meaning which will best serve the purpose and intent of those who use it in their contracts.

The contract was made with reference to road work in King county, and it is evident that the parties had in mind

that respondent should have protection against the quotation of any lesser price to those engaged in work of a like kind or character. The intent of the contract was to put respondent on the same footing as other like contractors.

Appellant quoted a lower price to the county for the advantage of contractors generally. This was a reduction of the market price in so far as such price was quoted to, or for the benefit of, those engaged in the same kind of work. It may be seriously questioned whether appellant made proof of a market price above $1.75 per barrel. Sales managers or officers of three firms or companies were called to testify that the price quoted, and at which sales were made at the time appellant and respondent entered into the contract, was $1.90 per barrel. It appears, by correspondence between appellant and the county, that the price quoted to the county was made by the "local cement companies." The participating parties agree that respondent said that all companies charged the same and that he might as well deal with respondent. Market price implies price or value in an open market, and that buying and selling have some influence upon the price. If the market is not open, but subject to control by all who offer a commodity of like kind, by fixing a price, either by express agreement or by a common, though unexpressed, understanding, how can it be said that there is a market price? An intending purchaser must buy or refuse to buy with reference to the price demanded. In such cases, market price should be held to be market value. The only transaction showing value is the price quoted to the county. It was a price to the county, but for the benefit and advantage of other contractors, and without limitation as to quantity. Respondent would have been entitled to share the benefit if he had entered into his contract a month later than he did. The offer is some evidence to show the market price or value at the time it was made. If it is not, appellant could make and break contracts at its pleasure. To illustrate, appellant might, of its own accord, or in

common with others, maintain a quoted price and, by the mere calling of it a market price, sell at will at a lower price and defend against a contract such as it is now called upon to perform, by asserting that each sale, whether one or many, was made as a single sale and with benevolent intent to aid in the building of the particular thing for which the commodity was to be used, whether it be a road, a dwelling house, or the upbuilding of a particular community. Or it could sell a great quantity and defend by saying that a sale of an unusual amount of its wares warranted it in making a special price within the market price, which was in no way affected, or it could sell in a small quantity, saying that the sale was so small that it had no effect upon the market price. Under the testimony and all its inferences, it seems reasonable to hold that the so-called market price was no more than a quoted price of the dealer, and that the only proof of market price is the price quoted to the county. Surely this should be the rule where the testimony is conflicting as to the exact terms of the contract.

We are not, therefore, put to the necessity of considering respondent's version that he was to have the rebate if there was "any cut in the price." Although, in passing, it is not out of place to say that appellant's contention is the more probable in the light of all attending circumstances.

Appellant seeks to avoid its liability by contending that respondent did not intend that its offer was to have any retroactive force or to apply to any contract already let. When respondent took the matter up with appellant's manager, he was told "that it [the offer to King county] did not apply to his contract, was not retroactive, the special price was made to the county for the purpose of building more hard surfaced roads, and that the county had misconstrued our letter; if they would read it again they would find it was not retroactive, and applied only to contracts from then on and when the county, in their called-for bids, stated they would furnish the cement."

A letter subsequently addressed to the chairman of the board of county commissioners was produced, in which the president of the company says:

"Referring further to matter of prices on cement to be used in county road and bridge work, you will undoubtedly remember my telling you that this price would not be made retroactive, i. e., it would not apply on contracts awarded prior to the advice given your honorable body on June 10th, that the price would be reduced to the basis of $1.75 net, delivered on a 5c freight rate.

"The local cement companies, in reducing the price to the above mentioned figure, did so for the purpose of assisting in a practical way the efforts being made to permanently improve the country roads of the state. It was not intended as a bonus to contractors who had been awarded contracts, and whose bids were based upon the old price.

"We would naturally prefer that the price given you be not spread broadcast, and that no mention be made of it except when calling for bids, and then that it appear only in the specifications or in the call for bids, as you can appreciate that we might find it a difficult matter to justify a lower price to the county than to the individual consumer."

Counsel also offered to prove that it was the understanding of the company and the county commissioners that the offer to the county and the letter quoted did not contain all of the oral agreements between appellant and the county, and that, prior to the making of the offer, it was, by oral agreement, understood that the contract with the county was not to be retroactive. The offer was rejected and properly so. In the first place, any agreement between the county and appellant to limit the terms of the offer is wholly immaterial in so far as it might affect third parties. Furthermore, to admit the proffered proof would be to destroy the contract made by respondent, utterly. If, under the contract, as stated by either party, respondent was not to have the benefit of a price *subsequently* fixed, he had no contract at all. The parties intended that a cut in the market price should retroact upon respondent's contract. The price respondent was

14—95 WASH.

to pay was $1.90, *unless* a better price was quoted while his road contract was in force.

If appellant's theory be correct, all contracts would be vulnerable to assault by mental reservations, or liable to be overcome by self-serving declarations or writings addressed to some third party. In all matters involving contracts between private litigants, it is the province of the courts to ascertain the terms of the contract and to enforce it.

Affirmed.

ELLIS, C. J., MORRIS, MAIN, and WEBSTER, JJ., concur.