## PAXTON & GALLAGHER v. PELLISH
(No. 1687; June 2, 1931; 299 Pac. 708)

For the appellants there was a brief and oral arguments by *W. W. Tipton and John D. McGowen,* of Laramie, Wyoming.

For the respondent there was a brief and oral argument by *E. T. Lazear,* of Cheyenne, Wyoming.

BLUME, Justice.

On January 24, 1928, Pellish Brothers, the defendants herein, bought of the plaintiff, Paxton & Gallagher Company, of Omaha, a bill of goods consisting of shotgun shells, intended to be sold by the defendants during the game season of 1928, lasting from September to December, both months inclusive. The goods were to be shipped during the summer shortly previous to the commencement of the game season. In the written order given for these goods, the plaintiff's agent, who sold the goods to the defendants, wrote into the contract the clause in controversy in this case, namely, "price guaranteed against decline to December 31, 1928." The order signed by the defendants also contained the following printed clause: "If we are quoted lower prices by responsible parties on goods of equal quality, we are to have the privilege of cancelling this order unless you desire to meet such prices, providing we notify you at least ten days before above mentioned date of shipment." The shipment was made on August 25, 1928. Defendants claim that the price of shotgun shells declined in 1928 as contemplated in the special clause inserted as above mentioned. The evidence on behalf of the plaintiff shows that no such decline took place. The evidence on behalf of the defendant shows that in the latter part of November or the fore part of December, 1928, an agent of Shapleigh Hardware Company, jobbers of ammunition, of St. Louis, Missouri, offered to sell the defendants shotgun shells similar to those bought from the plaintiff at less than one-half the price. A list of these shotgun shells was introduced in evidence, which shows the regular price per thousand and the special price at which they were offered at the time above mentioned, and contained the clause "sold subject to stock on hand." A letter from this company

written to the defendants on April 8, 1929, indicates that the special price above mentioned was made for a special reason. The court found on this subject that by a new "simplification method" of manufacturing shotgun shells a differently made shell was placed on the market in the year 1928, the new shells having a non-rusting primer and being shellacked. The court further found

"that on or about December 1st, 1928, the Shapleigh Hardware Company, the same being a large distributor of ammunition, placed several car loads of ammunition identical to that sold by the plaintiff, Paxton & Gallagher Company, to the defendants, Pellish Brothers, on the market at a greatly reduced price, believing that the new shell would render the old style shell obsolete; that by this sale the price of such shells was reduced from thirty (30) to fifty (50) per cent; and that these defendants had opportunity to purchase such shells in quantities of their own desire at such reduced price."

The court also found that

"the shell manufacturers of the country, including the National Lead Company, who was the manufacturer of the shells in question, did not lower the price of shells in 1928 and that the only sale of shells shown by the evidence at a reduced price, was the sale by the Shapleigh Hardware Company as (above set forth)."

The court concluded, as a matter of law, that the special offer made by the Shapleigh Hardware Company did not constitute a "price decline" such as was contemplated in the order given to the plaintiff above mentioned, and held the defendant liable for the balance due on the contract, in the sum of $257.45. Judgment was rendered accordingly, and the defendant has appealed to this court.

The question involved in this case, accordingly, is as to whether or not the special offer and the special sales by the Shapleigh Hardware Company as above mentioned, constituted a price decline within the meaning of the special

clause inserted in the contract above mentioned. Not many cases are found upon the subject. A note thereon is contained in 55 A. L. R. 268. The main cases upon which counsel for the defendants herein rely are McGarry v. Superior Portland Cement Co., 95 Wash. 412, 163 Pac. 928, Ann. Cas. 1918A, 572, and Ford v. Norton, 32 N. M. 518, 260 Pac. 411, 414, 55 A. L. R. 261.

The exact basis of the decision in the McGarry case is not clear. McGarry, a contractor, was about to bid on the construction of a county road in King County, and bought cement at $1.90 per barrel, with the agreement, as he claimed, that in case the cement company "quoted" a less price to any other contractor or concern, or agreed to furnish cement at a less price to any other contractor or concern, he should have a rebate of a corresponding amount. The cement company claimed that he was to have a rebate, if the "market price" fell below $1.90. After this agreement was made, the cement company offered cement to King County for $1.75 per barrel, and the county, in giving notice to the contractors, agreed to furnish cement at that sum. The trial court held this to be a quotation of a lower price, and that respondent was entitled to a rebate. The court evidently adopted the contention of McGarry that the "quoted" price should govern, and it is, of course, clear that a quotation different from that to McGarry was made to the county, and in this view, the decision could not well have been other than it was. The Supreme Court, however, further discusses "market price" to some extent, and apparently holds that even if the contract was as contended by the cement company, McGarry was entitled to a rebate, and bases its holding partially, apparently, on the fact that there was no, or few, sales to any one except defendant and the county, and mainly on the intention of the parties, saying in part:

"The contract was made with reference to road work in King County, and it is evident that the parties had in mind that respondent should have protection against the quota-

tion of any lesser price to those engaged in work of a like kind or character. The intent of the contract was to put respondent on the same footing as other like contractors. Appellant quoted a lower price to the county for the advantage of contractors generally. This was a reduction of the market price in so far as such price was quoted to, or for the benefit of, those engaged in the same kind of work.''

The intention being as here mentioned, the decision was, of course, clearly right. The situation in the case at bar is, however, entirely different, and the facts from which an intention to give a rebate could be gathered are of a wholly different kind.

In Ford v. Norton, supra, it appears that the parties had entered into a contract to the effect that the defendant, who was engaged in the business of selling gasoline at retail, should buy all such gasoline, at wholesale, from the plaintiff at market price. Plaintiff demanded from $18\frac{1}{2}$ to 20 cents per gallon, claiming that as the market price, and at which some of the gasoline was actually sold. But there was a so-called gas war on for a period of time, the length of which does not definitely appear, but which seems to have lasted for months, and during this time one wholesaler sold the gasoline at 17 cents a gallon, regularly supplying the community, though not to the extent of the full demand. The court held that the parties contemplated that the ''market price'' at which defendant was to buy was the ''lowest market price;'' that there was in fact in the community a low price and a high price, and that the defendant was not compelled to buy at the latter price. The court said among other things:

''Immediately market price is fixed by supply and demand. The Clayton Coal and Oil Company, in order to move gasoline, put it on the market at 17 cents. We cannot see that it matters whether the motive was to destroy competition or quickly to raise money to meet pressing obligations, or whether it lost or profited by its transactions. When that supply was exhausted, the relation between supply and demand changed. Gasoline was then obtainable in

Springer at less than 18½ cents. So that became the market price.''

The language quoted undoubtedly gives color to the view maintained by counsel for the appellants. Still we think that there is a material difference between that case and this. The case at bar involves a rebate, not a purchase or a number of purchases. In the New Mexico case, gasoline at a cheaper price was furnished regularly, day after day, for a period of time at least. Under these facts it was, perhaps, not unreasonable for the court to find that a market price was established thereby, and that the contract contemplated that defendant should be able to buy at the lowest rate. In the case at bar, there was a sporadic offering of a limited quantity of goods; the offer might or might not be carried out by delivery, depending on whether any goods of that kind remained on hand or not. After all, it is a question of intention of the parties. Is it reasonable to say that they intended that a ''decline of price'' should be considered to be established by such an offer, so as to compel a rebate to be given? It is readily seen that to make offers of a lower price controlling under a contract such as is involved here, especially when made at a time when merchants have already bought their year's supply, and when such offers could not well be accepted, would open the door to all kinds of fraudulent practices, for such offers might be made by a competitor solely for the purpose of seducing the retailer from his former associations. The defendants were given the opportunity of taking advantage of such lower offers up to ten days before shipment, by another and printed part of the contract, which gave them the right to cancel the order given, unless the lower price was met by the plaintiff. And the contention of counsel for the defendants is substantially to the effect that the written clause above set forth was intended to extend that opportunity to the end of the year. But the language of the printed clause and that of the written clause differs widely, and it would seem

that if they were intended to refer to the same subject matter language much more apt could and should have been used. It is said in 38 C. J. 1261, that market price is established by the "consensus" of buyers and sellers— doubtless taken as a whole, and assuming, of course, that there are a number of buyers and sellers. In the case of Bromer Bauman Lead Company v. Haynes, 81 Me. 27, 16 Atl. 326, the same contention was made as in this case, namely, that the seller's price should be the same as the price which would be offered to the purchaser by any one else. The court overruled the contention. In that case, the defendant was about to buy lead from the plaintiff. The former, expecting the arrival of plaintiff's agent, with whom they were to make more definite terms, telegraphed the plaintiffs in these words: "Will you protect and guaranty us on lead until your agent gets here." The answer was "yes." The contention as to the meaning of the correspondence, and the conclusion of the court, is stated in the opinion thus:

"The plaintiffs contend that this meant that, until other arrangements should be personally made by the agent, the lead forwarded should be priced as cheaply as the same article was sold by them to any one else, while the defendant's construction is that the price should be as low as any other party would have sold the same thing to them. We are satisfied that the meaning of the expression was that the plaintiffs would sell as low as the most favorable market price at the time. Other sales or offers which were exceptionally low for special reasons, not representing or reflecting fair market price, would not govern."

Wing v. Oil & Grease Company, 99 Wisc. 248, 74 N. W. 819 is similar. The contract of sale in that case provided that "if during the deliveries on this contract, the price should be below the price herein named, we (plaintiff) agree to rebate such difference on deliveries so affected." Instead of "the price," the contract at first contained the clause "our price" but was changed at the defendant's—

the purchaser's—request. The latter contended, as counsel for defendant contend in the case at bar, that the price made by any one whatever should be the governing price. The court said:

"Counsel insist that the defendant suggested the change so as to protect it 'not only against prices which might be made by the plaintiff, but by any one else as well.' If that was the purpose, apt words should have been employed to secure that purpose. The words 'the price,' as used, naturally refer to some known or ascertainable price—some standard of value. * * * To say that the term 'price,' as used in the contract, is not the market price, but some specific price, though secret and unknown to any person except the contracting parties, is to distort its ordinary meaning. We must hold that, as used in the contract, it means the market price."

The two cases last cited and quoted from are, we think, directly in point herein. It is, of course, true that the clause in controversy here was inserted for the defendant's benefit, and we may concede that it should, in case of doubt, be construed in their favor. But the circumstances surrounding it indicate, we think, that defendant's construction ought not to prevail. Provision had already been made, as stated above, to protect defendants in their competition with other merchants, up to ten days prior to shipment, which was in the summer. The hunting season was from September to January 1st, as shown by the testimony. Retailers of ammunition would generally have their purchases made before the beginning of the hunting season, and hence the argument that the clause in question, if construed otherwise than as contended by defendants, would not have subserved the purpose of enabling them to compete with other retailers, loses much, if not all, of its force. The clause guaranteed against a "decline" in price. That contemplated a standard—a market price. It did not mean the same thing as a reduced price offered sporadically and specially by some one who wanted to get rid of a limited

quantity for a special purpose, as in the case at bar. We think the trial court was right and that the judgment herein should be affirmed. It is so ordered.

*Affirmed.*

KIMBALL, Ch. J., and RINER, J., concur.