[Civ. No. 5755. Third Appellate District.—October 11, 1937.]

UNITED LUMBER YARDS, INC. (a Corporation), Appellant, v. MODESTO IRRIGATION DISTRICT (a Public Corporation), Respondent.

Dennett & Zion for Appellant.

Vernon F. Gant for Respondent.

THOMPSON, J.—From a judgment which was rendered in favor of the defendant to the effect that plaintiff take nothing in this suit for an alleged balance due upon the contract price of cement sold and delivered, this appeal was perfected.

Upon competitive bids therefor, the plaintiff was awarded a contract in January, 1935, to supply defendant with approximately 18,000 barrels of Monolith Tufa cement at a cost of $1.84 per barrel. The contract contained the following provision:

"It is hereby agreed that should the price per barrel of Tufa Cement, *on the open market during the life of this con-*

*tract,* be reduced lower than the price bid per barrel for Tufa Cement in this contract, that the Modesto Irrigation District shall have the benefit of such reduction.''

Pursuant to that contract plaintiff delivered after February, 1935, to the defendant from time to time during the life of the agreement a total of 10,500 barrels of cement, for which it was fully paid with the exception of $817.43, which sum represents the alleged reduction of the price of that cement ''on the open market during the life of this contract''. The court found, in effect, that the price of the cement had been reduced ''on the open market'' in that vicinity during the life of the contract approximately eleven cents per barrel, and that the plaintiff had therefore been fully paid the contract price for all cement sold and delivered thereunder. Judgment was rendered accordingly. From that judgment the plaintiff has appealed.

The burden was on the defendant to show a reduction of the price of cement on the open market during the life of the contract. We are of the opinion there is ample evidence to support the findings of the court to the effect that there was a reduction in the price of Tufa cement in that district in the open market during the life of the contract to an amount which fully covers the plaintiff's claim. All of the cement was furnished by plaintiff pursuant to the contract between January 3, 1935, and March 24, 1935. Only 3,750 barrels were delivered before February 13th. Mr. N. M. Cecil, engineer for the Modesto Irrigation District, testified that on February 13, 1935, the defendant's attention was called to the fact that the Monolith Portland Cement Company issued a schedule under which it sold Monolith Tufa cement at reduced prices throughout the state of California, effective from the last-mentioned date, fixing the price, including the cost of delivery to the various destinations; that this schedule fixed the price at $1.70 per barrel at Modesto, and $1.73 per barrel at Waterford, where the cement in question was to be delivered; that this reduced schedule of prices remained fixed at those figures until June 28, 1935. This schedule of prices was received in evidence without objection. Mr. Cecil further testified that the defendant purchased from the Yosemite Cement Company in the latter part of February two carloads of cement at the reduced price of $1.71 per barrel. On April 1, 1935, the plaintiff sent to the defendant a tabulated statement of its account, claiming

a balance due for previous deliveries of cement at the rate of $1.84 per barrel, amounting to the sum of $886.62. On the last-mentioned date, pursuant to defendant's claim of a reduction of the price of cement on the open market in that vicinity in accordance with previous communications with the plaintiff, a warrant for the sum of $836.62 was drawn in favor of the plaintiff in full payment of that claim on the basis of $1.73 per barrel. Upon that warrant there was endorsed "In full payment of items listed below." This transaction furnishes some evidence of a recognition on the part of the plaintiff of a valid reduction of the quoted contract price of $1.84 per barrel to $1.73 per barrel. On February 19, 1935, the defendant wrote plaintiff the following letter:

"Enclosed find three confirming purchase orders for cement to be delivered to our construction jobs on the upper main canal.

"We have received printed price lists showing that Tufa Cements have dropped in price on the open market. Our contract with you calls for cement to be delivered to Waterford at the price of $1.84 per barrel. The new printed price lists, effective February 13, 1935, show Tufa cement delivered to the same location to be selling on the open market at $1.73 per barrel.

"Our contract agreement with you specifies that should the open market be lower than that of the contract agreement, the Modesto Irrigation District is to receive the benefit of such lower price.

"In accordance with this agreement we have reduced the price on our purchase orders from $1.84 per barrel to $1.73 per barrel, f.o.b. Waterford, less the 10c per barrel discount for payment in fifteen days."

There is substantial evidence of a reduction of the price of Monolith Tufa cement on the open market at Waterford during the time involved in this action to the sum of $1.73 per barrel. The plaintiff offered no evidence to the contrary. There is no evidence that the price of that cement at that point during that period of time was more than $1.73 per barrel.

The appellant contends that the price of that cement fixed by the Monolith Portland Cement Company, and the purchase of two carloads from the Yosemite Cement Company at $1.71, during that period of time, does not furnish evidence of a reduction of the market value thereof. It is fur-

ther asserted that the Monolith Portland Cement Company was an unsuccessful bidder on the contract for cement with the defendant and that its reduced schedule of prices was fraudulent and uncontrolling.

We may assume that the Monolith Portland Cement Company was one of the unsuccessful bidders among several others for the contract with the defendant. That circumstance, however, furnishes no substantial evidence of fraud. There was no effort to prove that this schedule of prices was fraudulent. It is true there may be a great difference between the true market value of a commodity and the mere *market price* thereof. (38 C. J. 1261, secs. 16–18.) It is also true that a stimulated market price, created by artificial or fraudulent practices, will not establish the true value or price thereof. (*McGarry* v. *Superior Portland Cement Co.,* 95 Wash. 412 [163 Pac. 928, Ann. Cas. 1918A, 572, note]; *Paxton & Gallagher Co.* v. *Pellish,* 43 Wyo. 182 [299 Pac. 708].) In the present case there is no evidence of either stimulated or fraudulent fixing of the price of cement. We are of the opinion the reduction of the market value, as distinguished from the market price of cement, is not involved in this case. The contract specifically states that "should the *price* per barrel of Tufa Cement, on the open market during the life of this contract, *be reduced* . . . The Modesto Irrigation District *shall have the benefit of such reduction*". Apparently the price of Tufa cement to all prospective purchasers at that locality was reduced to $1.73 per barrel by a leading firm. This reduction of price was recognized by the Yosemite Cement Company, and also by the plaintiff in accepting payment in full for certain shipments at that rate. That is substantial evidence of a reduction of the price. The stipulated reduction of price "on the open market" merely means that the commodity might be purchased in fair trade on the market at a lower price than the figure which is stated in the contract. It is said in 38 Corpus Juris, page 1261, section 16:

"The term 'market price' implies price or value in an open market, and that as between one who desires, but is not compelled, to buy, and one who is willing, but not compelled to sell."

The case of *McGarry* v. *Superior Portland Cement Co., supra,* is unfavorable to this appellant, upon facts similar to

the present case. The syllabus of that case correctly states the ground upon which that case was decided, as follows:

"As 'market price' has no hard and fast meaning, and, . . . where plaintiff contractor purchased cement at a stated price per barrel under an agreement that he was to have a reduction or rebate if the market price fell below that named while deliveries were being made to him, and later *the defendant quoted a lower price to the county* for county roads for the advantage of contractors generally, the quotation to the county, without limitation as to quantity for the benefit of those engaged in the same kind of work as plaintiff, *was reduction in market price which entitled plaintiff to a rebate.*"

In the present case a reputable leading cement industry not only quoted to the defendant a reduced price for the identical kind of cement, but it also issued a printed schedule of prices offering to sell that cement to anyone who desired to purchase it at that reduced price. In the absence of evidence to the contrary, we are of the opinion this furnishes substantial evidence of a reduced price of the commodity on the open market.

The judgment is affirmed.

Pullen, P. J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 9, 1937, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 9, 1937.