JOHN W. McDOUGALL COMPANY, INC.

*v.*

Z. D. ATKINS, Commissioner of Finance and Taxation
of the State of Tennessee.

(*Nashville*, December Term, 1956.)

Opinion filed March 8, 1957.

EUGENE N. COLLINS, Chattanooga; ROSENFIELD, BOROD,
FONES & BOGATIN, Memphis, WHITE, GULLETT & PHILLIPS,
Nashville, for appellant.

GEORGE F. McCANLESS, Attorney General, ALLISON B. HUMPHREYS, Solicitor General, MILTON P. RICE, Assistant Attorney General, for appellee.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

John W. McDougall Company, as a contractor, makes ducts and installs them in buildings. It paid the sales tax on all the sheet metal used, but did not pay any sales tax based on the cost of the labor used in fashioning this sheet metal into ducts. The State exacted an additional payment based on such labor cost. McDougall paid under protest on the theory that it is a tax on labor rather than a sales tax on tangible personalty, and sued to recover the deficiency assessment so paid. The Chancellor upheld the action of the State, and dismissed the bill. McDougall has appealed.

This may seem at first blush to be a novel application of a sales tax on tangible personalty, but, aside from the statute, the logic of the State's position begins to appear when there is recalled the fact that a contractor who

erects buildings or installs fixtures therein is not "a seller of the tangible personal property incorporated into the contract, but is a user of such property". Hence, such contractor, rather than the contractee owner of the building, is liable for the sales tax on the tangible personal property used. *Townsend Electric Co. v. Evans,* 193 Tenn. 536, 246 S.W.2d 967.

Had McDougall, the user, been able to purchase the sheet metal already converted into usable ducts, it would have been liable for a sales tax on the price it paid. The price exacted of it necessarily would have included the labor expense incurred in such previous conversion. But, ducts made for one building cannot, as a general rule, be used in any other building because of many physical and engineering factors. Hence, they must be made specially, and according to measurements, shapes, sizes, etc., for the particular building to which they are to be affixed.

McDougall, therefore, instead of paying for a completed duct, the price of which includes the labor in so fashioning the sheet metal, pays, under the decision of the Chancellor, the price of the sheet metal plus the labor expense incurred by him in making that metal into a duct. As an end result, McDougall, in such payment of the sales tax, will pay no more than if it had purchased the finished product which it, as consumer, affixed to the realty of the contractee.

Appellant's brief cites cases from numerous jurisdictions wherein no effort was made to collect a sales tax upon such labor expense incurred by the contractor. But there is not involved in any of those decisions the statute

which is controlling here. It is a 1949 amendment to the Sales Tax Law, and is carried in the Code at section 67-3004. Its language is:

> "Where a manufacturer, producer, compounder or contractor erects or applies tangible personal property, which he has manufactured, produced, compounded or severed from the earth, for the account of or under contract with the owner of realty or other property, such person so using the tangible personal property shall pay the tax herein leviel on the fair market value of such tangible personal property when used, without any deductions whatsoever."

McDougall's first insistence is that it is not a manufacturer of ducts. Specifically, what McDougall does is to so cut, bend, shape, bind, etc., sheet metal as to make it a round, rectangular or other form container through which hot or cold air is transmitted at a planned velocity and volume throughout the building to which these containers, called ducts, are affixed. The question is whether such activity upon the part of McDougall brings McDougall within a reasonable definition of the word "manufacturer".

The briefs quote several definitions of the word. And, of course, it does have several. Perhaps the one most appropriate here is the one found in the text of 55 C.J.S., Manufacturers, sec. 1, pp. 672-673. According to that text, supported by decisions, "every one who manufactures is not embraced within the legal meaning of the term, but rather only those who manufacture articles of trade as the principal part of their business." A princi-

pal part of McDougall's business is making these ducts. It qualifies, therefore, as a "manufacturer" in that respect.

This text at the pages mentioned, after stating that "there can be no all-inclusive difinition of the word", continues with a definition, among others, that a manufacturer is "one who prepares an original substance for use in a different form", and declares that the term "(manufacturer) is more comprehensively defined as meaning", among other meanings, "one who gives new shapes, new qualities, new combinations to matter which has already gone through some artificial process". Since that is exactly what McDougall does as a principal business, it, McDougall, necessarily falls within this reasonable definition of a "manufacturer" in making these ducts. This definition is the equivalent of the one given in *Chattanooga Plow Co. v. Hays,* 125 Tenn. 148, 156, 140 S.W. 1068, 1069, that "a 'manufacturer' is one engaged in making materials, raw or partly finished, into wares suitable for use".

McDougall plausibly argues that the maker of ducts is no more a manufacturer than a plumber, a brick mason, an electrician or a carpenter. Under some circumstances a logical distinction is not clear. However, as a general practice, brick masons, plumbers, etc., only deal with attaching the finished product to the building, rather than with the making of that product, as does McDougall. Moreover, the question of what circumstances may bring any of such artisans within the definition of a manufacturer does not affect the fact that the principal business of McDougall with which this case is concerned, and its activities therein, fall within the definition of a "manufacturer".

■ It is next insisted that these ducts have no market value except as scrap metal. This insistence is grounded on the fact that, generally speaking, ducts made for one building are of no use whatever in any other building; hence, if taken out of the particular building in which they are installed, they are valuable only as scrap metal. The fallacy of this insistence is in the fact that the statute provides that the tax shall be levied on the fair market value "when used"; not, when scrapped.

An examination of texts and judicial utterances reveals the fact that the expression "fair market value" has no invariable definition, but that its meaning varies with the circumstances surrounding a given object and situation to which it is sought to apply the term.

When the Supreme Court of the State of Washington was dealing with the definition of "market price" in the case of *McGarry v. Superior Portland Cement Co.*, 95 Wash. 412, 163 P. 928, Ann.Cas. 1918A, 572, its observation, stated in the language of the text of 55 C.J.S., p. 786, was this:—"When the term becomes the subject of legal controversy, it will be given that meaning which will best serve the purpose and intent of those who use it". The good sense of that statement is readily recognized, and it is as equally applicable to the term "fair market value" when that term becomes the subject of legal controversy.

The legislature necessarily knew that a contractor who is to affix a finished product to the building of the contractee may buy the raw material which he manufactures into such finished product at a small fraction of the labor cost incurred in the manufacturing process. As

long as such contractor, the user, is required to pay a sales tax on only the cost of the raw material, the purpose of the sales tax law is to that extent defeated.

In this Court's opinion, the language of the 1949 amendment hereinabove quoted requires a conclusion that the legislature, in its enactment, purposed the stopping of a loop hole of the character stated in the Sales Tax Law by requiring that the cost of the labor be included in computing the amount of the sales tax owed by such contractor. That is, it intended that such labor cost be included in computing the "fair market value" of the finished product. We are not able to ascribe any other meaning to the language used by the legislature or to otherwise explain why the amendment was enacted. Compliance with this legitimate legislative intent is accomplished by giving that meaning to the expression "fair market value", as used in that amendment.

The Chancellor's decree will be affirmed with Chief Justice Neil, not participating.