IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 1, 2025



**VITTORIO CAFINI v. GARRY KING**

**Appeal from the Circuit Court for McMinn County**
**No. 20-CV-329**

_____

**No. E2024-00799-COA-R3-CV**

_____

This is an action to recover damages for purported breach of contract, negligence, breach of implied warranty of merchantability, breach of implied duty of indemnity, and fraud in construction of a home. After a bench trial, the court ruled in favor of the defendant. The plaintiff appealed. We affirm the ruling of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, P.J., E.S., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., C.J., and KENNY ARMSTRONG, J., joined.

Andrew E. Bateman, Athens, Tennessee, for the appellant, Vittorio Cafini.

D. Mitchell Bryant, Athens, Tennessee, for the appellee, Garry King.

**OPINION**

**I. BACKGROUND**

Vittorio Cafini ("Purchaser"), a citizen of Australia,[1] entered into an oral agreement with Garry King ("Builder") wherein unlicensed Builder would construct an 1800 square foot home on a piece of land Purchaser bought in Riceville, Tennessee, in June 2016, for $45,000. The house was completed in June 2018. Purchaser testified in a deposition that

---

[1] Purchaser's name appears to be "Lalli-Cafini." He and his wife currently reside in Perth, Western Australia. His wife is an American whose family was originally from Tennessee.

the total amount of money he paid in labor to Builder and/or people that worked for him "was between 200,000 and 220,000 U.S.," not including land. Purchaser related that half the money went into materials and half into labor. Including other expenditures, Purchaser valued his total investment in the house at somewhere between $244,000 and $265,000.

According to the record, a few months later, an earthquake hit the area. Prior to this event, Purchaser claimed to have documented issues with his home. Builder related that he also felt the earthquake and sustained damages at his nearby home.

As to his specific claims in this action, Purchaser asserts that during the construction, numerous issues arose wherein Builder did not perform in a good and workmanlike manner. Purchaser contends that upon completion of the home, it was apparent that the foundation of the house was laid incorrectly, leading to cracks, sagging, and numerous structural issues, including water damage. Purchaser claims that the failure to properly lay the foundation rendered the home unlivable and financially worthless. A structural engineer hired by Purchaser to evaluate the home identified some items that he considered to be defective. The engineer testified that the soil below the home was not properly compacted, but he admitted he did not perform a compaction test. Additionally, there is evidence in the record that the earthquake in the area caused some of the home's alleged structural issues. The engineer, however, was not made aware of the earthquake when he surveyed the home. Purchaser acknowledges in his deposition that he did not bring in anyone other than Builder to make any repairs on the house and he did not get a quote from anyone else to make the repairs.

Builder contends that Purchaser did not raise any issue regarding the home not being built in a good and workmanlike manner with him. For each issue complained of, Builder made repairs, paid Purchaser partial repair costs, or, on one occasion, left the home after being cursed at by Purchaser. Builder further denies Purchaser's damages allegations. He notes that he and his brother were paid $15 per hour for their labor by Purchaser during the construction. They were reimbursed for any additional helpers that they hired, who they paid out of their pocket. Builder argues the payments made by Purchaser were well below the amounts claimed.

Purchaser listed the house for sale in February 2019. Despite admitting that he considered the house "structurally unsound," he listed it for sale for $329,900.[2] Within two months (April 3, 2019), he sold the house for $248,000.

In the instant action, Purchaser sued Builder for breach of contract, negligence, breach of implied warranty of merchantability, breach of implied duty of indemnity, and fraud.[3] At trial on March 26, 2024, both sides presented testimony regarding the supposed

---

[2] The trial court found the amount to be $323,000.
[3] The fraud claim was disposed of prior to trial.

defective condition of the home. For each alleged defect raised, the trial court found Builder offered a rebuttal to each claim or otherwise had settled the issue. Additionally, the court credited Builder's testimony that if Purchaser "was not satisfied" with the work Builder "would have repaired the alleged defects, if any, that were not related to the earthquake." The court found that Purchaser did not give Builder an adequate opportunity to cure any of the alleged defects not related to the earthquake. Thus, the court held that Purchaser had failed to meet his burden of proof as to any of the claims. Further, the court also found that Purchaser had failed to provide any competent evidence of damages. The trial court noted as follows:

> It is significant to the Court that Plaintiff failed to present any proof at trial as to the cost to repair the alleged defects. It is also significant to the Court that Plaintiff testified "<u>I decided to sell the house at all costs and go back to Australia</u>." (Emphasis added) . . . .

This timely appeal followed.

## II. ISSUES

The issues raised in this appeal are restated as follows:

A. Whether the trial court correctly held that Purchaser failed to meet his burden of proof as to his claims.

B. Whether the trial court correctly held that Purchaser failed to provide any competent proof of damages.

C. Whether Builder is entitled to his attorney fees and costs for defending a frivolous appeal.

## III. STANDARD OF REVIEW

In an appeal from a bench trial, we review the trial court's findings of fact *de novo* with a presumption of correctness. Tenn. R. App. P. 13(d); *In re Angela E.*, 303 S.W.3d 240, 246 (Tenn. 2010). Questions of law are reviewed *de novo* but with no presumption of correctness. *Eberbach v. Eberbach*, 535 S.W.3d 467, 473 (Tenn. 2017) (citing *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006); *Taylor v. Fezell*, 158 S.W.3d 352, 257 (2005)). "'Because the trial court is able to observe witnesses as they testify, appellate courts afford deference to the trial court's credibility assessments of live, in-court testimony.'" *Trentham v. Mid-Am. Apartments, LP*, 705 S.W.3d 151, 161-62 (Tenn. 2025) (quoting *Phillips v. Hatfield*, 624 S.W.3d 464, 474 (Tenn. 2021)). In non-jury cases like this, "great weight is given to the trial court's determinations of credibility," so appellate courts accordingly give "great weight to a trial court's factual findings that rest on determinations of credibility."

*Tenn. Homes v. Welch*, 664 S.W.3d 1, 8 (Tenn. Ct. App. 2022) (quoting *Pless v. Pless*, 603 S.W.3d 753, 770 (Tenn. Ct. App. 2019)).

## IV. DISCUSSION

### A. Burden of Proof

Purchaser's main argument is that the trial court erred when it found he did not meet his burden of proof for his claims. Purchaser made various allegations about the ways in which the home was defectively constructed. He contends that he presented expert testimony revealing the flaws in the house's construction. From reviewing Purchaser's deposition testimony, it is clear how despondent he had become about a house he considered "not worth repairing" and "cost[ing] me . . . more than that I already put in to get it repaired."

For each claim, however, Builder presented contrary evidence that the alleged violation was either up to code, remedied, or in one case, offered to be remedied but rejected. Purchaser seemingly ignored his own admission that Builder "qualified as an expert" and rebutted each point offered. After hearing the evidence, the trial court chose to credit Builder's testimony about the quality of the home upon completion and his willingness to perform repairs over Purchaser's assertions. It held that Purchaser failed to provide sufficient evidence of any defective construction. The trial court determined that Builder "provided expert testimony without objection." When reviewing a trial court's decisions regarding the admissibility of expert testimony, questions regarding the qualifications, admissibility, relevancy, and competency of expert testimony are matters left within the broad discretion of the trial court. *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004). The trial judge has wide discretion in the matter of the qualifications of expert witnesses. *Stokes v. Leungs*, 651 S.W.2d 704, 706 (Tenn. Ct. App. 1982).

We do not find the case cited by Purchaser, *Buttrey v. Holloway's, Inc.*, No. M2011-01335-COA-R3-CV, 2012 WL 6451802, at *1 (Tenn. Ct. App. Dec. 12, 2012), to be persuasive under the facts of this matter. Here, the trial court heard testimony from both sides, evaluated all the evidence, credited the evidence it found persuasive, and rendered a judgment supported by that evidence. Nothing Purchaser has presented contradicts that ruling.

### B. Damages

"'The party seeking damages has the burden of proving them.'" *Bancorp South Bank, Inc. v. Hatchel*, 223 S.W.3d 223, 229 (Tenn. Ct. App. 2006) (quoting *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 703 (Tenn. Ct. App. 1999)).

In construction cases where a breach of contract is alleged, the general rule is that "the measure of damages is the cost of correcting the defects or completing the omissions." *Jessee's Est. v. White*, 633 S.W.2d 767, 769 (Tenn. Ct. App. 1982) (quoting *Am. Jur. 2d Damages*, § 79). However, if the cost of repairs would be "grossly disproportionate" to the actual diminution of the structure's value, the court can consider diminution as the appropriate measure of damages. *See id.* Crucially, a court cannot even look to diminution of value unless "proof has been offered on both" diminution and cost of repair. *GSB Contractors, Inc. v. Hess*, 179 S.W.3d 535, 543 (Tenn. Ct. App. 2005) (quoting *Nutzell v. Godwin*, No. 33, 1989 WL 76306, at *2 (Tenn. Ct. App. July 13, 1989)).

The trial court found that there was no proof of the costs of repair presented in this case, and Purchaser admitted he had no such proof. Purchaser's brief does not discuss this issue at all. As Purchaser presented no competent proof of damages, the court rejected his assertion that the fair market value of the home was $248,000—a price $75,000 below its initial listing price that Purchaser accepted immediately without ever receiving another offer due to his stated desire to "sell the house at all costs." The trial court recounted:

> Purchaser listed the house for $323,000. Purchaser sold the house within 6 weeks on or about March 26, 2019 and accepted the very first offer of $248,000. Purchaser testified the fair market value of his house in a purported defect free condition would have been $320,000-330,000 . . . . Purchaser did not present an expert appraisal.

Purchaser responds that his $248,000 valuation is sufficient proof of fair market value based on the fact that the sale of the home was an "arms-length transaction" for what he thought the home was worth.

"[T]he expression 'fair market value' has no invariable definition, but [] its meaning varies with the circumstances surrounding a given object and situation to which it is sought to apply the term." *Cutshaw v. Hensley*, No. E2014-01561-COA-R3-CV, 2015 WL 4557490, at *6 (Tenn. Ct. App. July 29, 2015) (quoting *John W. McDougall Co. v. Atkins*, 301 S.W.2d 335, 337 (Tenn. 1957)). We have acknowledged the following definition:

> The price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction; the point at which supply and demand intersect.

*Id.* at *5. Admittedly, sale price can be probative of fair market value, but it is not definitive. "[U]nder some circumstances, an appraisal may provide a more accurate measure of the fair market value than the actual selling price." *Hartigan v. Brush*, No. E2019-00262-COA-R3-CV, 2020 WL 563522, at *4 (Tenn. Ct. App. Feb. 4, 2020) (quoting *Simpson v. Golden Serv. Realty & Auction, Inc.*, No. 02A01-9509-CH-00203, 1996 WL 732487, at *4 (Tenn. Ct. App. Dec. 23, 1996)). Ultimately, the best method for determining fair market value

- 5 -

"is driven by the factual circumstances of the case." *Id.* at *3.

The trial court determined that Purchaser did not provide competent evidence of fair market value. Although Purchaser testified that he believed the home was worth the $248,000 he sold it for, the trial court discounted this testimony against the fact that Purchaser admitted he "decided to sell the house at all costs." *See also Simpson*, 1996 WL 732487, at *4 (sale price is not a valuable measure of fair market value "where the seller is under a compulsion to sell quickly"). It was well within the trial court's discretion to do so. Accordingly, even though this court need not reach the issue because 1) the trial court did not err in determining there was no breach of contract; and 2) Purchaser failed to make an argument as to cost of repairs, the trial court's determination that Purchaser failed to prove damages must be affirmed.

### C. Frivolous Appeal

Builder asserts that Purchaser's raised issues are completely baseless. He seeks to recover the reasonable and necessary attorney fees and expenses incurred in defending this appeal.

Tennessee Code Annotated section 27-1-122 provides that:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

"'A frivolous appeal is one that is "devoid of merit," or one in which there is little prospect that [an appeal] can ever succeed.'" *Motealleh v. ReMax TriStar Realty*, No. E2023-01407-COA-R3-CV, 2024 WL 5199839, at *4 (Tenn. Ct. App. Dec. 23, 2024) (quoting *Morton v. Morton*, 182 S.W.3d 821, 838 (Tenn. Ct. App. 2005)). "A successful party should not be forced to bear the costs and vexation of a baseless appeal, nor should appellate courts be saddled with such appeals." *Id.* (citing *Henderson v. SAIA, Inc.*, 318 S.W. 3d 328, 342 (Tenn. 2010). Whether to award damages due to a frivolous appeal is a discretionary decision. *Banks v. St. Francis Hosp.*, 697 S.W.2d 340, 343 (Tenn. 1985).

Although we must take care not to discourage legitimate appeals, *Motealleh*, 2024 WL 51990839, at *4, upon review, we find that this appeal is so devoid of merit as to warrant the award of damages under the statute.

### V. CONCLUSION

For the reasons stated above, we affirm the trial court in all respects. This cause is

remanded to the trial court for the collection of costs below and for a determination of damages for the frivolous appeal. The costs on appeal are assessed against the appellant, Vittorio Cafini.


s/ John W. McClarty
JOHN W. MCCLARTY, JUDGE