Argued November 16, reversed and remanded with directions November 27, 1917, rehearing denied February 26, 1918.

## GREAT WESTERN LAND CO. *v.* WAITE.*

(168 Pac. 927; 171 Pac. 193.)

**Evidence—Employment of Broker—Secondary Evidence—Statute.**

1. The provision as to secondary evidence in Section 808, L. O. L., excluding all evidence of an agreement employing a broker to sell real estate, other than the writing or secondary evidence of its contents, refers to cases where the writing is lost or is in the possession of the adverse party, who refuses to produce it on proper notice.

> [As to supplementing brokerage contract by proof of collateral oral agreement, see note in Ann. Cas. 1914A, 458.]

**Brokers—Contract of Employment—Statute of Frauds.**

2. Letter from defendant, in reply to some letter, stating that if plaintiff has a customer for defendant's land, he will make a price of $15 an acre net to defendant, reply from plaintiff, stating it will endeavor to make as much profit as possible, and will expect defendant to protect it in the matter of difference between net price and the quotation to be made to purchaser, and letters from defendant agreeing to protect plaintiff in such matter, are insufficient as a contract of employment of broker to sell real estate, within Section 808, L. O. L., declaring such a contract void, unless there be a written memorandum thereof, subscribed by the parties, expressing the consideration, and excluding all evidence of the agreement other than the writing or secondary evidence of its contents; there being no words of employment, and it being necessary that the papers establish the hiring and the consideration for it.

**Brokers—Contract of Employment—Statute of Frauds.**

3. Correspondence *held* not to show a contract of employment of plaintiff by defendant as his broker to sell land, within Section 808, L. O. L., requiring a written memorandum of such contract, expressing the consideration.

From Multnomah: ROBERT G. MORROW, Judge.

Department 1.    Statement by MR. JUSTICE BURNETT.

After stating its corporate existence and the defendant's ownership of certain lands in Douglas County, the plaintiff alleges:

---

*On necessity that authority of agent to purchase or sell real property be in writing to enable him to recover compensation for his services, see notes in 44 L. R. A. 601, and 9 L. R. A. (N. S.) 933.

"That prior to the said 24th day of February, 1914, the defendant hired plaintiff as his real estate broker and agent to find and cause to be found for him a purchaser for said tract of land, and then and there agreed and contracted with plaintiff to pay to it, when it should find or cause to be found such purchaser for said land, a commission and compensation of $1.50 (One and fifty one-hundredths Dollars) per acre, amounting in all to Five Thousand Three Hundred Thirteen ($5313.00) Dollars."

The remainder of the pleading is to the effect that the plaintiff found a purchaser to whom the defendant sold the land, and that he has not paid the commission mentioned, nor any part thereof.

The answer traversed the whole complaint except the part relating to the defendant's title to the land and the artificial entity of the plaintiff. From a judgment adverse to him as the result of a trial before the court, without a jury, the defendant appeals.

REVERSED WITH DIRECTIONS.

For appellant there was a brief and an oral argument by *Mr. John K. Kollock.*

For respondent there was a brief over the names of *Messrs. Littlefield & Maguire* and *Mr. Clarence L. Reames,* with oral arguments by *Mr. Robert F. Maguire* and *Mr. Reames.*

MR. JUSTICE BURNETT delivered the opinion of the court.

The chief thing to be determined is whether the papers offered by the plaintiff as proof of its allegation of its hiring as a real estate broker by the defendant were sufficient within the statute of frauds of this state. There are other questions urged relating to the

admissibility of what purported to be carbon copies of certain writings without having given notice to produce the originals; but we deem it unnecessary to consider more than the principal contention.

According to the findings, the plaintiff wrote to the defendant November 25, 1913, suggesting that it was in a position to obtain a purchaser for the realty mentioned and desiring to know what commission he would pay in event of a sale and upon what terms he wished to dispose of the property. This letter was not answered and subsequently the plaintiff wrote another communication, the contents of which were not disclosed as it was not produced. The bill of exceptions discloses the following correspondence between the parties:

"Portland, Ore., December 18, 1913.
"Great Western Land Co.,
    "Eugene, Oregon.

"Gentlemen: Your favor of December First at hand and, in answer to the same, beg to state that, if you have a purchaser for my Round Prairie tract of land, consisting of thirty-five hundred eighty-two (3582) acres, I will make the price Fifteen Dollars ($15) per acre net to me. This is a bed rock price and will only be offered at that price for a short time. If, in case you have an interested party, I will give you a reasonable time in which to close the deal, but would not care to give any extended option at this time. This place sold for Fifty-four Thousand ($54000.00) six years ago, and since that time, farm lands have more than doubled in value in our county. My terms would be one half cash, and balance on three or five years' time, at eight per cent. These terms might be changed a little to suit purchaser, but any amount left standing on the place would have to bear eight per cent interest.

"Very respectfully yours,
        "F. B. WAITE,
            "Sutherlin, Oregon."

"December 20, 1913.

"F. B. Waite,
    "Sutherlin, Oregon.

"Dear Sir: Replying to your favor of the 18th inst. and thanking you for your kind offer, on the basis of which we are now endeavoring to negotiate a deal for your property, we will say that it is possible that our client may not be able to pay one half cash at this time, but we believe that such a substantial payment will be made that the balances would be amply secured. We are co-operating with some other people in the matter of handling this deal and naturally will endeavor to make as much profit out of the transaction as possible, and will expect you to protect us in the matter of difference between the net price and the quotations to be made to the purchaser; we understand this is in the neighborhood of $20.00 an acre, although it may be considerably less before the deal is finally consummated. We feel that you are entitled to know the details of the transaction and shall be pleased to keep you informed as to our progress in the matter. Again thanking you for your favor and trusting that we may be able to be of service to you, we beg to remain,

"Yours respectfully,
"GREAT WESTERN LAND Co., INC.,
"By —————, President.

"OSH–H."

In addition thereto the instrument in writing here set out signed by the defendant was identified and introduced:

"Sutherlin, Oregon, Jan. 6, 1914.

"I hereby agree to protect you, the Great Western Land Co., of Eugene, in the sale of 3582 acres Round Prairie to Reverend Doering or associates. The price shall be not less than $16.50 to the Rev. Doering and $15 net to me subject to change only under agreement to you.

"F. B. WAITE."

So far as relates to the present contention, Section 808, L. O. L., reads thus:

"In the following cases the agreement is void unless the same or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party to be charged, or by his lawfully authorized agent; evidence, therefore, of the agreement shall not be received other than the writing or secondary evidence of its contents, in the cases prescribed by law; * * 8. An agreement entered into subsequent to the taking effect of this act, authorizing or employing an agent or broker to sell or purchase real estate for compensation or commission."

1, 2. Remembering that the law says no evidence except the writing shall be received to prove the agreement, the task before us is to determine whether the writings in question comply with the terms of the enactment. In passing, we remark that the exception relating to secondary evidence of its contents naturally refers to cases where the writing is lost or is in the possession of the adverse party who refuses to produce it upon proper notice. The letter of December 18, 1913, signed by the defendant and addressed to the plaintiff, contains no intimation that the former intended to employ the latter. It merely gives terms upon which he would sell to the client of the plaintiff. Nothing more is shown by that communication than that the defendant was negotiating on his own account with the plaintiff as the representative of someone else.

The crux of the situation is in the effect of the writing of January 6, 1914, above quoted. Even in that there is no language whatever that can be construed as a hiring of the plaintiff, yet this is the very thing which the pleading put in issue and in support of which proof was required. Again, although the defendant agrees to "protect" the plaintiff, whatever that may mean, there is no consideration expressed in the document even for that covenant. There may be a mone-

tary consideration or a promise for a promise, but neither of these things is expressed in the writing.  In other words, there is nothing stated in the instrument to which reference may be had as inducing Waite to subscribe the instrument.  It is not enough that the language might imply a consideration, for the statute plainly says the consideration must be expressed.  It appears by the bill of exceptions that despite the defendant's objections the trial court admitted oral testimony by which the plaintiff sought to establish the contract.  This is in plain derogation of the requirements laid down by the Code and was manifest error.  Unless we can find sufficient in the paper to establish the contract of hiring and the consideration for it the plaintiff is without proof, for the statute not only says that the agreement is void unless it is couched in the terms prescribed, but also that no evidence other than the writing shall be received.  The matter has received consideration by this court in the following cases : *Taggart* v. *Hunter* (on rehearing), 78 Or. 151 (152 Pac. 871) ; *Lueddemann* v. *Rudolf,* 79 Or. 249 (154 Pac. 116, 155 Pac. 172).  The citations from other states have but little value under our own enactment for, as pointed out by Mr. Justice BENSON in *Taggart* v. *Hunter,* 78 Or. 151 (152 Pac. 871), our own legislation is the most drastic of its kind in the United States in that it not only declares the contract void, unless there is a memorandum thereof in writing expressing the consideration and signed by the party to be charged, but goes further and excludes all other evidence of the agreement.  All these writings were challenged by the objections of the defendant specifying wherein they failed to comply with the statute of frauds, but were received in evidence and were allowed to be supple-

mented by oral testimony also over the protest of the defendant. Under our Code the plaintiff was in court without any proof of the allegation of his complaint where challenged by the denials of the answer. The judgment of the Circuit Court is therefore reversed and the cause remanded, with direction to enter the judgment of nonsuit for which the defendant asked at the close of plaintiff's case in chief.

REVERSED WITH DIRECTIONS.    REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE HARRIS and MR. JUSTICE MCCAMANT concur.

———

Rehearing denied February 26, 1918.

ON PETITION FOR REHEARING.    PETITION OVERRULED.

(171 Pac. 193.)

*Mr. C. L. Reames* and *Messrs. Littlefield & Maguire,* for the petition.

*Mr. John K. Kollock, contra.*

Department 1.   MR. JUSTICE BURNETT delivered the opinion of the court.

3. Protesting against the reversal of the judgment for the plaintiff in this case with directions for the trial court to enter a judgment of nonsuit therein, the plaintiff has filed a petition for rehearing, contending that it was wrong to grant the nonsuit; that the decision was erroneous in refusing to consider testimony as to the contents of a missing letter; and that the conclusion reached was contrary to earlier decisions of this court upon the same question under the statute of frauds. For the sake of greater clarity we here set

down in full all the papers passing between the parties
as disclosed by the record:

### 1.

"Nov. 25, 1913.

"Mr. Waite,
   "Sutherlin, Oreg.
"Dear Sir:
   "We understand that you are the owner of a large
tract of land at Round Prairie and that the same has
been submitted on the basis of $20.00 an acre.  We
believe that we are in a position to successfully submit
this property and would like to have your authoriza-
tion to submit the same and giving us the very lowest
cash price on the property, also stating what commis-
sions you would pay in the event of sale; also stating
whether you would consider good income city trade
for part or all of the property.
   "We have some clients interested in a proposition
of this kind and your immediate attention to this will
be highly appreciated as our parties are waiting for
an answer from us.
   "Thanking you for your immediate attention to this,
we beg to remain,              Yours truly.
                  "GREAT WESTERN LAND CO., INC.
                     "By ———, President."

### 2.

As shown by the oral testimony to which allusion
has been made all that the missing letter amounted to
was a request from the plaintiff to Waite asking for
an answer to the letter above quoted dated November
25, 1913.

### 3.

"December 18, 1913.

"Great Western Land Co.,
   "Eugene, Oregon.
"Gentlemen:
   "Your favor of December First at hand and, in an-
swer to the same, beg to state that, if you have a pur-

chaser for my Round Prairie tract of land, consisting of thirty-five hundred eighty-two (3582) acres, I will make the price Fifteen Dollars ($15) per acre net to me. This is a bed rock price and will only be offered at that price for a short time.

"If, in case you have an interested party, I will give you a reasonable time in which to close the deal, but would not care to give any extended option at this time.

"This place sold for Fifty-four Thousand ($54,000) six years ago, and since that time, farm lands have more than doubled in value in our county.

"My terms would be one half cash, and balance on three or five years' time, at eight per cent. These terms might be changed a little to suit purchaser, but any amount left standing on the place would have to bear eight per cent interest.

"Very respectfully yours,

"F. B. WAITE,

"Sutherlin, Oregon."

**4.**

"December 20, 1913.

"F. B. Waite,

"Sutherlin, Oregon.

"Dear Sir:

"Replying to your favor of the 18th inst. and thanking you for your kind offer, on the basis of which we are now endeavoring to negotiate a deal for your property, we will say that it is possible that our client may not be able to pay one half cash at this time, but we believe that such a substantial payment will be made that the balances would be amply secured.

"We are co-operating with some other people in the matter of handling this deal and naturally will endeavor to make as much profit out of the transaction as possible, and will expect you to protect us in the matter of difference between the net price and the quotations to be made to the purchaser; we understand this is in the neighborhood of $20.00 an acre, altho it may be considerably less before the deal is finally consummated. We feel that you are entitled to know the

details of the transaction and shall be pleased to keep you informed as to our progress in the matter.

"Again thanking you for your favor and trusting that we may be able to be of service to you, we beg to remain,                              Yours truly,
                    "GREAT WESTERN LAND CO., INC.
                              "By ———, President."

### 5.

                              "Marshfield, Ore., Jan. 2, 1914.
"Great Western Land Co.,
     "Eugene, Ore.
"Will be here Chandler Hotel until further notice.
                              "F. B. WAITE."
                                   (Telegram.)

### 6.

                              "Sutherlin, Ore., Jan. 6, 1914.
"I hereby agree to protect you 'The Great Western Land Co.,' of Eugene in the sale of 3582 acres Round Prairie to Rev. Doering or associates.   The price shall be not less than $16.50 to the Rev. Doering and $15.00 net to me.   Subject to change only under agreement with you.
                              "F. B. WAITE."

### 7.

                              "Eugene, Ore., Jan. 6, 1914.
"F. B. Waite,
     "Sutherlin, Ore.
"Out of our commission of one dollar and fifty cents per acre we will stand as a part payment for getting immediate possession Round Prairie Farm one thousand dollars one half commission payable when first payment of ten thousand dollars is made balance of commission payable out of second payment.
                              "GREAT WESTERN LAND CO."
                                   (Telegram.)

The missing letter is negligible and the omission to consider testimony about it furnishes no ground for rehearing because it adds nothing to terms or condi-

87 Or.—32

tions of the negotiation. The letter opening the correspondence on behalf of plaintiff properly may be construed as that of a buying broker approaching a land owner in the interest of the former's client. The plaintiff there informs the defendant that "we have some clients interested in a proposition of this kind," and the defendant was well within his rights in considering this as an overture by those clients acting through their own broker to begin negotiations for the purchase of the land in question. We note indeed that the plaintiff asks in that letter that the defendant state what commission he would pay in the event of a sale; but asking the question does not amount to a contract. It is not a case where silence gives consent. On the contrary, in the defendant's letter of December 18th we find him treating this correspondence of the plaintiff as a quest for an option. He gives the lowest price, without any intimation about commission and after saying that the land will be offered at the price named only for a short time, he says:

"I will give you a reasonable time in which to close the deal, but would not care to give any extended option at this time."

Thus far we have no acceptance by the plaintiff of whatever offer may be framed upon the defendant's letters. In the next letter of December 20, 1913, the plaintiff fails to accept the condition imposed by the defendant for payment by the purchaser of half cash and balance on three or five years' time at eight per cent, saying

"that it is possible that our client may not be able to pay one-half cash at this time, but we believe that such a substantial payment will be made that the balance would be amply secured."

Here also is an utter lack of acceptance of the offer of the defendant so as to correspond precisely therewith. The telegram from the defendant at Marshfield throws no light upon the subject. It merely locates him until further notice. Then come the instrument he signed at Sutherlin, January 6, 1914, and the telegram sent to him by the plaintiff from Eugene on the same day. The testimony does not disclose which one of these papers was first in point of time. However, if the telegram preceded the ''protect'' paper, the latter instrument does not show any assent to the terms of the former whatever they are. If the ''protect'' paper was first then the telegram was an effort to add another condition to which no subsequent assent is shown, thus leaving the negotiation open with the result that there was no contract for want of final acceptance of the additional terms proposed.

Remembering that the statute says, ''Evidence, therefore, of the agreement shall not be received other than the writing or secondary evidence of its contents,'' it becomes our duty to construe the quoted documents and determine whether in effect they amount to a contract of hiring as alleged in the complaint. The rule is as stated by Mr. Justice McBRIDE in *Henry* v. *Harker,* 61 Or. 276, 290 (118 Pac. 205, 122 Pac. 298):

''But when, as in this case, the contract consists wholly of a writing or series of writings all admitted to be genuine, and containing no technical terms, the construction of the writings becomes a matter of pure law for the court: *Hutchison* v. *Bowler,* 5 M. & W. 535; *Goddard* v. *Foster,* 17 Wall. (U. S.) 123 (21 L. Ed. 589.)''

Looking at the whole case made by the correspondence to which the statute restricts us as a matter of

evidence, there is no situation disclosed where one party makes a distinct proposition to the other which is unmistakably and precisely accepted by the latter in the exact terms in which it was offered.

Moreover, as we have shown, the plaintiff approached the defendant in the character of a buying broker and agent acting and proposing to act for another party not disclosed. There is nothing in the writings on either side showing that the defendant ever assented to any change of front on the part of the plaintiff. The writing of January 6, 1914, signed by the defendant at Sutherlin is consistent only with the role assumed by the plaintiff of representing some one other than the defendant. It may be likened to the telegrams involved in the case of *Beymer Bauman Lead Co.* v. *Haynes,* 81 Me. 27 (16 Atl. 326). It seems that the plaintiff there was a wholesale dealer in paint materials and was represented by traveling salesmen. The defendants were retailers and telegraphed the plaintiff thus:

"Will you protect and guarantee us on lead until your agent gets here? We are offered inducements."

The plaintiff answered: "Yes." The court construing the word "protect" said:

"We are satisfied that the meaning of the expression was that the plaintiff would sell as low as the most favorable market price at the time."

In the light of that precedent the writing under immediate consideration is properly construed only as an agreement by Waite not to sell the land for less than $16.50 per acre, leaving the plaintiff to get as much as it could from its own client, the expected purchaser. The telegrams in the Maine case were not set down as an agreement to pay money; but were held to be a stipulation to maintain minimum prices on lead.

That is all Waite did in the present instance; granting that the writing he signed otherwise expresses a valid contract. Under that instrument the plaintiff could have quoted any price it chose to its principal subject to the minimum prescribed by its terms. It does not in any sense constitute an agreement by Waite to pay money nor a hiring of the plaintiff by the defendant; and yet hiring is what the plaintiff relies upon in its complaint.

Again, in all this correspondence there is nothing expressing anything paid or promised or a condition to be performed by the plaintiff which induced the defendant to act or to sign any writing. We might almost take judicial notice that a real estate broker is always on the lookout for a commission from whatever source it may come. On the other hand, it is equally certain that the owner of land usually declines to pay a commission unless he has promised to do so. To that end the statute was framed requiring the agreement to be reduced to writing expressing the consideration and subscribed by the party to be charged. Giving to all these writings their utmost scope as in effect one instrument, there is no language in any of them amounting to an expression of the consideration even by ''necessary implication as some of the courts have put it.'' Even the ''commission'' mentioned in plaintiff's telegram of January 6, 1914, may be the compensation to be paid by the purchaser who was the client of the plaintiff as stated in its letter beginning the correspondence. Going to the limit of construction favorable to the plaintiff in the direction of implication, it cannot be ''necessarily implied'' that the commission mentioned was to be paid by the defendant.

In the petition for rehearing the plaintiff has cited *Bowman* v. *Wade,* 54 Or. 347 (103 Pac. 72), claiming

that the decision therein leads to the conclusion that a contract not measuring up to the statute of frauds is not always utterly void. The statute, however, says in direct terms that such an agreement *is* void. More-over, the opinion in the case does not teach the doctrine ascribed to it. It was a case where the plaintiff averred that he had loaned to the defendant a sum of money to be repaid in three years with interest; and that, as evidence of the loan, the defendant had caused his demented son to execute a promissory note for the land secured by mortgage on land to which he had no title. The defendant himself signed no paper. Under these circumstances, on discovering the true condition of affairs, the plaintiff brought the action as for money had and received seeking to charge the defendant directly for repayment of the money. On behalf of Wade it was urged that the agreement mentioned was void so far as he was concerned because it was within the statute of frauds making void under its provisions "an agreement that by its terms is not to be performed within a year from the making thereof." So far as the statute of frauds is concerned the opinion of Mr. Justice SLATER adopted the argument of Mr. Chief Justice DIXON in *McClellan* v. *Sanford,* 26 Wis. 595, reaching the conclusion that the doctrine of the cases is that the provision of the statute now being considered applies to contracts not to be performed on either side within the year and that as the plaintiff Bowman had performed his part of the contract completely within the year by advancing the money, the statute did not apply. Even this construction was limited to cases where the stipulation sought to be enforced related solely to the payment of a money consideration.

Beyond all this also the court seems to have placed its decision upon the ground "that if it were held to be

within the statute, he [the plaintiff] may recover not upon the contract but for money had and reecived, if the complaint be so framed; this is undoubtedly held by many authorities'' (citing them). That is to say, the fact that the plaintiff advanced money to the defendant may be shown and for the purpose of negativing the idea that it was made to liquidate any obligation which the payer owed the payee or that it was intended as a gift, evidence of the void agreement may be received. In any event, the Bowman-Wade case is not apropos here because it is confined to cases where there is an effort on the part of the plaintiff to recover an actual payment of money and the principle is restricted to the recovery of cash considerations already paid. The distinguishing characteristic of that precedent in that respect is wanting here for it is not pretended that any money passed between the parties to the present case.

In brief, if we view the writings as an instance of contract by offer and acceptance there is no situation disclosed where one party accepts precisely and exactly the offer of the other without proposing new terms. Further, the plaintiff having assumed the attitude of a buying broker seeking for an option it has shown nothing indicating a change of front and this does not prove the allegation that the defendant hired the plaintiff; and finally, there is no language in any of the writings, taken all together, which expresses anything to be done, promised or performed by the plaintiff which would serve as an inducement or consideration sufficient to satisfy the statute and charge the defendant. The petition for rehearing is overruled.

REVERSED WITH DIRECTIONS.

REHEARING OVERRULED.

MR. CHIEF JUSTICE MCBRIDE and MR. JUSTICE MC-CAMANT concur.

MR. JUSTICE HARRIS delivered the following opinion, concurring specially:

The writings suggest that the Great Western Land Company might have occupied any one of three possible positions: (1) As a purchasing broker for its "client" H. E. Doering; (2) as an optionee, if such a term is permissible, holding an option with a limitation upon the price to be quoted by him; or (3) as a selling broker for Waite. If Waite did no more than to offer to deal with the plaintiff as a purchasing broker or as an optionee, it would avail the Great Western Land Company nothing if it did not accept such offer. If the plaintiff offered to deal with Waite as his selling broker that offer could not benefit the plaintiff if Waite did not accept it. The complaint alleges that the plaintiff was authorized and employed to act as a selling broker for Waite and hence by its pleading the plaintiff admits that it did not accept any offer that Waite may have made to deal with the plaintiff as a purchasing broker for its "clients" or as the holder of an option. If the plaintiff recovers at all it can only recover by showing that, as a result of an offer by one and an acceptance of that offer by the other, it was authorized and employed to act as a selling broker for Waite. If the writings signed by Waite disclose nothing but offers to treat with the plaintiff as a purchasing broker for its "clients" or as the holder of an option the plaintiff cannot prevail, for Waite is "the party to be charged." Looking at the writings signed by Waite it will be seen that every instrument signed by him proceeds upon the theory that he is dealing with or offering to deal with the Great Western Land Company as a purchasing broker for its "clients" or as the holder of an option. Waite never at any time agreed to pay a commission. The

first letter written by him speaks of an option and the "protect" letter of January 6, 1914, makes it clear, especially when construed in connection with the plaintiff's letter of December 20, 1913, that he did not consider that he was dealing with the plaintiff as his selling broker.

It must be remembered that the plaintiff must produce a writing or writings containing the essential terms of the contract expressed with such a degree of certainty that it may be understood without recourse to parol evidence to show the intention of the parties: Browne on St. of Frauds (5 ed.), § 371; 20 Cyc. 258; and the writing or writings relied upon by the plaintiff must tend to prove and not disprove the existence of an agreement between the parties authorizing or employing the Great Western Land Company to sell Waite's land for him for a commission: Browne on St. of Frauds (5 ed.), § 371a; *Catterlin* v. *Bush*, 39 Or. 496, 501 (59 Pac. 706, 65 Pac. 1064). Giving the writings signed by the plaintiff a meaning most favorable to the plaintiff and then examining the writings signed by the defendant it cannot be said that the parties at any time made an agreement authorizing or employing the plaintiff to sell the land for a commission or compensation to be paid by Waite. The defendant is the party to be charged and the essential terms of the agreement must be in writing signed by him; and while it is true that the statute is satisfied by letters and telegrams it is also true that the requirements of the statute are not fulfilled if the letters and telegrams amount to nothing more than offers and unaccepted counter offers.

The promise sued upon is the alleged promise of Waite to pay a commission for finding a purchaser. It is not claimed that the plaintiff paid anything or

made any promise to Waite as a consideration for his alleged promise to pay a commission and therefore the alleged service to be rendered by the plaintiff would be the consideration for the promise sued upon. Laying aside any question concerning the expression of the consideration and viewing the service to be performed by the broker solely as one of the essential elements of the contract, it must, of course, like the other essential elements of the contract, be stated in the writing with such a degree of certainty that it may be understood without recourse to parol evidence to show the intention of the parties; and if the service to be performed were so stated it would probably be sufficiently expressed to satisfy the statute when viewed as the consideration for the promise sued upon, for it would be difficult to conceive of a writing which would not either in terms or by necessary implication show the consideration for the promise to pay a commission where the service to be performed by the broker is the consideration for the promise of the owner and the writing contains all the essentials of an agreement authorizing a broker to sell land for a commission. The obstacle confronting the plaintiff in the instant case is that the writings do not disclose an agreement by Waite to pay the plaintiff a commission if the latter found a purchaser. If the writings did reveal such an agreement they would probably contain an expression of the consideration, assuming that the service of the broker constituted the consideration, for it is everywhere held, including jurisdictions having statutes requiring the consideration to be expressed, that the consideration is sufficiently expressed if it is "expressly expressed" or if it appears by necessary inference: *Osborne* v. *Baker,* 34

Minn. 307, 311 (25 N. W. 606, 57 Am. Rep. 55).   In no jurisdiction is it held that the consideration is not expressed when it appears by necessary inference.   The petition for a rehearing should be denied.