Argued and submitted December 19, 1979, affirmed January 28, 1980

## U.S. EMPLOYEES OF LANE COUNTY CREDIT UNION,
### *Respondent,*
### *v.*
## ROYAL, et ux, *Appellants.*
## (No. 78-1682, CA 13172)
#### 605 P2d 754

Russell D. Bevans, Eugene, argued the cause for appellants. With him on the brief was Bevans & McCullen, Eugene.

Randall E. Thwing, Eugene, argued the cause for respondent. With him on the brief was Thwing, Atherly & Butler, Eugene.

Before Schwab, Chief Judge, Thornton, Tanzer and Campbell, Judges.

CAMPBELL, J.

## CAMPBELL, J.

The defendants have appealed from the trial court's decree granting specific performance of an agreement for the sale of a tract of defendants' land to the plaintiff. We affirm.

On September 14, 1977, the plaintiff by an earnest money receipt form offered to purchase:

> "A piece of ground totaling 250 feet of frontage by 300 feet deep out of Parcels # 1,2,3 and 4 of the preliminnary [sic] plot plan of that ground owned by Dr. Fuller Royal located on Green Acres Road and tax lot 17-3-18-1800 * * * for the sum of 75,000 S.F. @ 1.00 per S.F. * * *
>     * * * * *
>
> "The exact amount of space is to be computed once a final survey has been made by the seller. The exact selling price is then to be determined on the basis of $1.00 per Square foot.
>
> "Seller to provide legal description 10 days prior to close of sale.
>
> "The buyer will be willing to adjust the size of the four parcels so as to comply with the over all concept the seller has for the property. Buyer would be willing to take a one year option on that frontage that would be remaining in parcel # 2 if that portion would pose any problem. Price per S.F. to be at the same cost factor per square foot.
>     * * * * *
>
> "Buyer and Seller each have a copy of the Preliminary lay out showing Parcels # 1, 2, 3 and 4 Total footage is roughly 75,000 out of said Parcels."

The defendants did not accept the plaintiff's offer, but on September 27, 1977, made a counter-offer:

> "Dr. Royal Agrees to sell a 200 Foot Strip on the Green Acres Road by 300 feet Deep out of Parcels 1,2,3,4 of the Preliminary Survey. A total of 60,000 S. F. at a price per foot of $1.30 or a total of $78,000.
> * * * * *
>
> "All other terms and conditions are shown on the original Earnest Money Receipt."

[277]

The counter-offer was accepted by the plaintiff. The defendants failed to have the property surveyed and refused to proceed with the agreement. The plaintiff filed this suit for specific performance. The trial court found for the plaintiff. On appeal, the defendants' primary contention is that the above writings do not "specify and adequately describe the property to be sold."

A copy of the map referred to in the earnest money receipt and the counter-offer as the "preliminary plot plan," the "preliminary lay out" and the "preliminary survey" is attached to this opinion.[1] It is the same document which was referred to in the trial court's special findings of fact and conclusions of·law as Exhibit 2.

A part of the trial court's special findings of fact and conclusions of law are as follows:

"2. The contract in question consists of an earnest money receipt dated September 14, 1977, a scale drawing received as Exhibit 2, and an owner's counter-offer, dated September 27, 1977. These documents read together evidence that the defendants agreed to sell a parcel of land with 200 feet of frontage on Green Acres Road in Lane County, Oregon, 300 feet deep from an area marked on Exhibit 2 as lots 1, 2, 3 and 4 for a price of $1.30 per square foot.

"3. A surveyor could locate lots 1, 2, 3 and 4 on the ground with the aid of Exhibit 2.

"4. The defendants intended to develop the property by placing a road substantially the same as diagrammed on Exhibit 2. It was to run at right angles from Green Acres Road, approximately 300 feet and then turn East and continue until it left the defendants' property. Its location would mark the approximate boundary of the property to be conveyed to the plaintiff.

---

[1] The map contains 9.2 acres of the defendants' property. The area to be sold, measuring 200 feet by 300 feet, contains approximately 1.5 acres. Green Acres Road marks the north boundary of the defendants' property. The west line is marked by 512'. The south line is marked by 565'. The east boundary is designated by an unnamed road.

"5. Due to the fact that the proposed roadway would be making a curved turn as opposed to a square corner, the exact number of square feet of the parcel could not be determined until the radius of the curve has been surveyed. Once the final survey has been prepared by the Seller, then the exact number of square feet can be computed and the purchase price determined.

"6. The 200 foot frontage referred to in the contract was to be measured from the West boundary line of lot 1 Easterly along the frontage of lot 1 and continuing into lot 2, as marked on Exhibit 2, so far as required to make the 200 foot frontage once the roadway mentioned above has been surveyed.

"7. The phrase 'the Buyer will be willing to adjust the size of the four parcels so as to comply with the overall concept the Seller has for the property' was intended to refer to the Buyer's willingness to take the remaining property in parcel 2 in the event Seller could not adequately develop it.

\* \* \* \* \*

"3. The decree shall further provide that the defendants, depending upon the road location, may make modest and minor adjustments with regard to dimensions on the total square footage to be conveyed, and may require the Buyers to purchase any portion of lot 2 as diagrammed on Exhibit 2, not coming within the 200 foot frontage, at the price of $1.30 per square foot."

The courts are liberal in construing descriptions of land to be conveyed. The description is sufficiently definite and certain if it is possible for a surveyor using the description to locate the land and establish the boundaries, with or without the aid of extrinsic evidence. *Phillips v. Johnson,* 266 Or 544, 514 P2d 1337 (1973); *O'Hara v. Brace,* 258 Or 416, 482 P2d 726 (1971); *Bogard v. Barhan,* 52 Or 121, 96 P 673 (1908).

The defendants argue that there is no basis for the trial court's finding that a surveyor could locate lots 1, 2, 3 and 4 on the ground with the aid of Exhibit 2. The defendant, Fuller Royal, gave the map to Ralph Lake and John Holvey. Lake was a real estate broker who

was requested by the plaintiff to find a location for a proposed new building. Holvey was the treasurer-manager of the plaintiff. Lake and Holvey took the map into the field. Lake designated tracts 1, 2, 3 and 4 on the map and drafted the earnest money receipt and the counter-offer. Both Lake and Holvey testified that they scaled the map, but did not say what result they reached. There were no markings on the ground designating the corners of the various tracts or the proposed road along the west boundary of tracts #1 and #3 and the south boundary of tracts #3 and #4

The defendants correctly point out that there is no scale marked on the map in question and that the numbers 565', 512' and 775' do not provide a proper basis for determining a scale. However, the map shows that it was prepared by a surveyor, engineer or skilled draftsman and was drawn to a scale. A surveyor could determine the scale on the map by comparing a known distance on the ground to the representation of the same distance of the map.[2]

Once the surveyor has determined the correct scale of Exhibit 2, then he can locate the northwest corner of tract #1 on the ground and survey the boundaries of the 200 x 300 foot tract. The starting point by necessity is the northwest corner of tract #1 because the agreement provides in effect that all of tract #1 will be sold and provides for the optional disposition of the remaining portion of tract #2 after the frontage of 200 feet has been determined. The provision to sell a "200 foot strip on the Green Acres Road by 300 feet deep * * *" makes the road the north boundary, requiring the depth to be measured to the south.

The defendants further argue that even if a surveyor could locate tracts 1, 2, 3 and 4 on the ground, there

_____

[2] Another map of the defendants' property was received in evidence. It contains all of the perimeter measurements of the property in feet and degrees. It has a scale: 1" equal 100'. By comparing the two maps an untrained eye could easily conclude that the attached map under question is also drawn on a scale of one inch equals one hundred feet.

has not been a definite determination of the property to be sold. They point out that the agreement provides that the plaintiff will be willing to adjust the size of the four lots to comply with the defendants' overall concept for the property and that the exact amount of space and the exact selling price will not be computed until the final survey has been made. It is their position that both the amount of land and the total selling price are open to further negotiation and, therefore, there has been no meeting of the minds on two of the essential elements of the contract. Specific performance of an agreement will not be granted if the parties have not agreed on one or more of the important, essential or material terms.[3] *David M. Scott Construction Corp. v. Farrell,* 285 Or 563, 592 P2d 551 (1979); *Southworth v. Oliver,* 284 Or 361, 587 P2d 994 (1978); *Seal v. Polehn,* 284 Or 259, 586 P2d 345 (1978); *Oates v. Stump,* 279 Or 397, 569 P2d 7 (1977); *Van v. Fox,* 278 Or 439, 564 P2d 695 (1977); *Howard v. Thomas,* 270 Or 6, 526 P2d 552 (1974).

The trial court in the findings of fact and conclusion of law quoted above answered the defendants by saying the exact number of square feet of the parcel could not be determined until the radius of the curve on the defendants' proposed road at the southwest corner of lot #3 has been surveyed, and that the defendants may require the plaintiff to purchase any portion of lot #2 outside of the 200 foot frontage at the price of $1.30 per square foot.

We agree with the trial court. We interpret the agreement between the parties and the trial court's findings and decree to mean that provisions for the proposed roadway, as diagrammed on the attached map, and the sale of the additional land in lot #2 are for the sole benefit of the defendants and at their option. If the defendants so elect they can have a

---

[3] M. Friedman, Contracts and Conveyances of Real Property (3d ed 1975), at p. 69, sets out the essential terms of a contract: "(1) the parties; (2) the subject matter; (3) the mutual promises; and (4) the price and consideration and terms of payment if the sale is not for cash."

square corner on their roadway, or no roadway. They may keep the surplus land in lot #2. It follows that said provisions are nonessential terms to the agreement. Both the land to be sold and the price are definite and certain. The contract will be specifically enforced.

We have considered and rejected the defendants' other contentions on appeal, without opinion.

Affirmed.