Argued and submitted September 24, 1980, reversed February 17, reconsideration denied March 26, petition for review denied April 21, 1981 (290 Or 853)

FORD et ux,
*Respondents,*
*v.*
BLINN et ux,
*Appellants.*

(No. L77-2562, CA 15584)

623 P2d 1110

Larry D. Moomaw, Beaverton, argued the cause for appellants. With him on the briefs was Blyth, Porcelli, Moomaw & Miller, Beaverton.

Robert L. Cowling, Medford, argued the cause for respondents. On the brief was Ford & Cowling, Medford.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

WARDEN, J.

### WARDEN, J.

This is an appeal by defendants from the trial court's decree specifically enforcing an oral contract for the sale of real property.

Plaintiffs and defendants had both a business and social relationship for many years, and in May, 1971, they purchased as tenants in common the real property which is the subject of this suit. In July, 1971, they entered into a limited partnership agreement with the purpose of establishing a dairy business and agreed to have the limited partnership lease the parties' real property as the site of the dairy operation. Plaintiffs lived on the property and operated the dairy business.

In 1975, defendants sold their interest in the limited partnership to plaintiffs. Thereafter, perhaps as early as May, 1975, the parties discussed purchase by plaintiffs of defendants' interest in the real property. In that month, defendant Dr. Blinn, had a superficial, "drive-by," appraisal done of the property. Fair market value was estimated at $150,000 to $160,000.

The parties agreed that the defendants would sell their interest in the property to the plaintiffs for $25,000. They discussed numerous payment plans. Dr. Blinn testified that proposed terms for payment were: (1) "interest only for five years"; (2) "interest only for five years building on the principal and start paying then in five years"; or (3) "no interest for five years and ballooning the sale price at five years". Dr. Blinn testified that no agreement was reached on any of these proposals.

Mrs. Ford, the primary negotiator on behalf of the plaintiffs, testified that the parties discussed the following payment plans: (1)"interest for the first five years and then making payments on the principal at the end of five years" and (2) "making the interest and the payment for the balloon payment of $32,000 all at once." Mrs. Ford testified that they agreed upon six percent interest, "interest only to be paid annually * * * [a]t the end of five years * * * ." "We

were going to start paying on the principal with interest included at that point." Mrs. Ford admitted that the parties had not worked out the amount of monthly payments or yearly payments.

Although plaintiffs testified that a deal had already been struck, Dr. Blinn called plaintiffs for rent receipts necessary to complete his 1976 tax returns as an "owner" of the property prior to April, 1977. At that time the parties agreed to report a sale of the property on their tax returns. Defendants reported that the property sold in 1976 for $25,000. The return did not indicate that any payments had been made or any of the terms of the agreement. Records of the defendants' accountant reveal that the sale was for $25,000 with eight percent interest.[1]

Afterwards, defendants learned that the Douglas County Assessor's appraisal showed the fair market value of the property to exceed $200,000. Defendant Dr. Blinn, testified that he decided to withdraw from the "negotiations" upon learning of the county appraisal figure.

Prior to dissolution of the limited partnership, the dairy made all payments on the real property including mortgage payments and taxes. After dissolution of the partnership plaintiffs not only paid the taxes and expenses of the real property, but they also purchased farm equipment, remodeled and maintained the living quarters on the real property, maintained and enlarged outbuildings on the property and generally improved the living and farming facilities. Mrs. Ford testified that the improvements made were necessary for the operation of the dairy business.

Mr. Ford testified that he took a job in California to earn money for the purchase of defendants' interest in the real property. He also testified that he had prolonged his employment in California in order to earn money to "pay off a car." On previous occasions he had taken jobs in California for periods of time while his wife oversaw the dairy.

---

[1] Plaintiffs' son testified that the agreed price was $25,000 at six percent interest with nothing to be paid for five years. One of plaintiffs' financial statements stated in regard to the sale "$25,000, five years, six percent interest only." Another financial statement stated "Blinn interest only, 4 1/2 years, $25,000."

The trial court found that there was an enforceable contract to sell the real property effective January 19, 1976 for $25,000 with "interest at 8%, such sum to be paid in installments or in full, at the option of Plaintiffs, within a period of five years." The decree provided that plaintiffs would tender $25,000 with eight percent interest per annum from January 19, 1976.

■ Our review is *de novo* because this is a suit in equity for specific performance. On appeal, defendants contend that the remedy of specific performance is not available to plaintiffs because the contract is too indefinite.

"The essential terms in a contract to sell real property are:

" '(1) parties; (2) the subject matter; (3) the mutual promises; (4) the price and consideration and terms of payment if the sale is not for cash.' M. Friedman, Contracts and Conveyances of Real Property 69 (3rd ed 1975)."

*Shipler Logging v. Ponderosa Inv.,* 45 Or App 325, 329, 608 P2d 211, *rev den* (1980); *see US Emp. of Lane Co. CU v. Royal,* 44 Or App 275, 605 P2d 754 (1980). Uncertainty in the terms of payment is held to be a defect in an essential provision and renders a contract unenforceable. However, if one of the alternative methods of payment is definite, then specific enforcement is available according to those terms. This is illustrated in *Phillips v. Johnson,* 266 Or 544, 514 P2d 1337 (1973), in which, although the provisions of an earnest money agreement were held to be too indefinite to be enforceable as to foreclosure and security provisions, the court entered a decree providing for cash payment because the agreement expressly conferred upon the purchaser the right to pay the entire purchase price in cash.

■ The trial court may not, however, decree terms of payment that were not in contemplation of the parties. In *David M. Scott Construction v. Farrell,* 285 Or 563, 592 P2d 551 (1979), the Supreme Court held that the trial court erred in specifically enforcing an earnest money agreement for the sale of land by decreeing a cash sale since the parties did not agree to a cash sale. In that case, the contract, unlike the agreement in *Phillips,* provided for installment payments. *See Landura Corp. v. Schroeder,* 272 Or 644, 652, 539 P2d 150 (1975); *Bagley v. Constant,* 268 Or

208, 213, 519 P2d 1255 (1974). We conclude, as did the trial court, that the parties did not agree to terms of payment other than cash.

We turn, then, to whether the remedy of a cash sale is appropriate. It is impossible to say the "ballooning" alternative is the equivalent of a cash sale because of the ambiguity of the testimony. Even the plaintiffs did not testify that this was the actual agreement. We find, therefore, that the parties did not agree to a cash sale. The trial court, in decreeing a cash sale, was in error.

We need not determine whether plaintiffs have overcome the strictures of the statute of frauds by part performance because we find there was no completed oral contract.

We conclude that the plaintiffs are not entitled to a decree of specific performance requiring defendants to convey their interest in the property to plaintiffs.

Reversed.