Argued and submitted November 10, 2003, on appeal, reversed and remanded; cross-appeal dismissed as moot March 2, 2005

Steven J. McINNIS,
*Appellant - Cross-Respondent,*

*v.*

George W. LIND, Jr.,
*Respondent - Cross-Appellant.*

00002-01550; A115791

108 P3d 578

Peter R. Mersereau argued the cause for appellant - cross-respondent. On the briefs were Thomas W. McPherson and Mersereau & Shannon, LLP.

Kenneth P. Childs argued the cause for respondent - cross-appellant. On respondent - cross-appellant's answering brief and opening brief on cross-appeal were Christine A. Kosydar, David E. Van't Hof, and Stoel Rives LLP. On respondent - cross-appellant's reply brief on cross-appeal were Christine A. Kosydar, Scott E. Crawford, and Stoel Rives LLP.

Before Haselton, Presiding Judge, and Linder and Ortega, Judges.

ORTEGA, J.

## ORTEGA, J.

This is a case involving an alleged oral modification of a written option to purchase real property. Defendant, the would-be seller, denies that the parties agreed to any modification. Plaintiff, the would-be buyer, insists that the written option agreement was modified and seeks specific performance of the agreement as modified. The trial court agreed with defendant that the claimed oral modification was barred by the statute of frauds because there was no writing sufficient to satisfy the statute and no partial performance that would remove the contract from the statute. Plaintiff appeals the resulting grant of summary judgment to defendant, and defendant cross-appeals the denial of his request for attorney fees. We conclude that there is a triable issue regarding whether the parties intended two writings to be read together to satisfy the statute and therefore reverse the summary judgment. Because of that disposition, we do not address the remaining issues raised by plaintiff or defendant's cross-appeal regarding his request for fees.

On review of a grant of summary judgment, we state the facts in the light most favorable to the nonmoving party, in this case plaintiff. *Lang v. Oregon-Idaho Annual Conference*, 173 Or App 389, 391, 21 P3d 1116 (2001). In 1995, the parties entered into a four-year written lease agreement for an industrial property in Portland that included an option to purchase the property (the original option). The original option was set forth in a separate written document and included a detailed description of the parcel, extensive closing terms, and a purchase price of $123,200, payable "on a note and trust deed in monthly installments of not less than $1030.00 including 8 [percent] per annum[,]" with the "[e]ntire unpaid balance due and payable on or before 20 years from the recording of said trust deed." The original option provided that, in order to exercise it, plaintiff must "deliver written notice thereof to [defendant] on or before" the option's specified expiration date, accompanied by payment in the amount of $5,000, to be applied to the purchase price. The option could not be exercised during the term of the lease and could be exercised "only if [plaintiff] is not nor has been in default under any term of this lease."

According to defendant, plaintiff breached the lease and thereby forfeited his rights under the original option. After defendant filed an ejectment action, the parties entered into settlement negotiations, but they now dispute whether they reached a settlement. According to plaintiff, defendant agreed to dismiss the action in exchange for plaintiff's promise to pay a higher purchase price for the property than the original option called for—specifically, a price of 80 percent of the fair market value as determined by a mutually agreed-upon appraiser. Defendant claims that he agreed to dismiss the action but never agreed on settlement terms with plaintiff and never agreed to modify the original option.

Plaintiff submitted several pieces of evidence to support his claim that the parties reached an agreement. First, a letter from defendant's attorney to plaintiff's attorney (the compromise letter) stated the following:

> "I wish to confirm our settlement. I do request that you sign a copy of this letter and return it to me acknowledging our agreement as follows:
>
> "1.   Your client will pay the funds as per my fax * * *. * * *
>
> "2.   Your client will pay off the Lien. * * *
>
> "3.   We will split the cost of a mutually agreeable appraiser who will value the property in August or September. Your client will have the option to purchase the property for the appraised value less 20 [percent] with closing to be as set forth in the [original option]. If your client declines to purchase, he should vacate by the same date.
>
> "4.   It is almost time for the June utilities. I am going on vacation until June 30, but upon my return I will fax the utility breakdown to you.
>
> "I must insist that if we have resolved this matter in the way we have discussed, that you sign the bottom of this letter evidencing our agreement. The letter and the funds as well as proof of the Lien pay-off should be in my hands upon my return from vacation. We can then file a Stipulated dismissal of [defendant's ejectment action]. If we don't have an agreement, we should then proceed."

Plaintiff's attorney did not sign the bottom of the letter as requested. However, about a month later, he sent defendant's attorney the following letter:

"Enclosed are checks to your trust account totaling $22,065.22 representing payment of rent, utilities and fees from October, 1998 through June 1999, adjusted for amounts already accepted by [defendant] for that time period, and rent for July 1999. You are not authorized to disburse these funds to [defendant] unless and until [defendant's ejectment action] is dismissed with prejudice. Also enclosed is a receipt from the city of Portland evidencing that the assessment against the * * * property has been paid off.

"A formal addendum to the [original option] should be signed by [defendant] and [plaintiff], providing that at the time of the exercise of the option, [defendant] and [plaintiff] will split the cost of an appraisal of the property. We would recommend Mark Barry who has experience of appraising property in the area * * *. * * * The option agreement addendum would then provide that [plaintiff] has the option to purchase the property at twenty percent below the appraised fair market value. Please advise if you wish our office to prepare the addendum.

"Thank you for your cooperation in resolving this matter."

Two weeks later, the parties entered into a stipulated notice and judgment of dismissal for the ejectment action, stating that "the parties give notice of dismissal of the action herein for the reason that the claim has been fully compromised and settled with prejudice and without cost to any of the parties." Additionally, the parties hired a mutually agreed-upon appraiser but cancelled his services before he appraised the property, apparently because their dispute continued.

When the lease term ended, plaintiff attempted to exercise his alleged option to purchase the property but defendant refused to convey the property. Plaintiff tendered to defendant $5,000, as required by the original option, but defendant did not cash that check. For each of the next three months, plaintiff tendered a check to defendant for $1,030, the monthly amount required under the original option's

payment terms. Defendant did cash at least one of those checks but insists that he considered them rent from a hold-over tenant.[1]

In response to defendant's refusal to convey the property, plaintiff initiated this action seeking specific performance of "the option agreement." Defendant counterclaimed for a declaration that the original option was no longer enforceable and for attorney fees. Defendant then moved for summary judgment on plaintiff's claim and his counterclaim, arguing that neither the original option nor the alleged oral modification was enforceable, the latter due to the statute of frauds, ORS 41.580(1)(e). Among his arguments in response, plaintiff contended that (1) notes or memoranda of the alleged oral modification existed sufficient to satisfy the statute, or (2) if the statute was not satisfied, the option as modified was enforceable under the doctrine of part performance. He belatedly filed a cross-motion for summary judgment seeking specific performance of the original option, but that cross-motion was stricken as untimely.

The trial court granted summary judgment to defendant on plaintiff's claim, concluding that the written evidence of the alleged oral modification did not satisfy the statute of frauds and that the part-performance doctrine did not apply. However, the court denied summary judgment on defendant's counterclaim (which sought declaratory relief regarding unenforceability of the original option) on the ground that there were genuine issues of fact regarding whether the original option could be exercised. Defendant then voluntarily dismissed his counterclaim, and plaintiff, in response, sought to amend his complaint to include a prayer for specific performance of the original option. A different judge heard that motion, found that the amendment would substantially prejudice defendant because the proposed amendment constituted a "whole new case," denied the motion, and dismissed the case. Plaintiff assigns error to the trial court's grant of

---

[1] The lease provided that a tenancy at sufferance would result if the tenant held over occupancy after the lease term. Monthly payments during the lease term were $2,000 and, according to defendant, the same amount would be due under a tenancy at sufferance. Accordingly, defendant asserts that he considered plaintiff to be a holdover tenant paying insufficient rent.

summary judgment to defendant, the court's refusal to construe his original pleading to include a prayer for specific performance of the original option, and the court's refusal to grant him leave to amend his complaint. As noted, our disposition of the summary judgment issues eliminates the need to address the pleading issues that plaintiff raises.

Oregon's statute of frauds provides that certain types of agreements, including those "for the sale of real property, or of any interest therein," must be in writing, unless an exception applies:

> "[T]he agreement is void, unless it, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party to be charged, or by the lawfully authorized agent of the party; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents in the cases prescribed by law."[2]

ORS 41.580(1). An agreement governed by the statute of frauds likewise may be modified only by a written agreement if the agreement as modified would also be within the statute of frauds. *Wash. Squ. v. First Lady Beauty Salons*, 290 Or 753, 761, 625 P2d 1311 (1981). The statute is satisfied, despite the absence of a written agreement, where "some note or memorandum" provides evidence of the parties' agreement. ORS 41.580(1). Oregon case law also recognizes an exception to the requirement of a written agreement where there is part performance of an oral agreement. *Luckey et ux v. Deatsman*, 217 Or 628, 633, 343 P2d 723 (1959). The alleged oral agreement here modified a lease

---

[2] The statute's interdiction against admitting evidence of an agreement "other than the writing" is subject to many common-law exceptions in addition to the statutory exception for "secondary evidence of its contents"—which refers to "cases where the writing is lost or is in the possession of the adverse party who refuses to produce it upon proper notice." *Great Western Land Co. v. Waite*, 87 Or 488, 492, 168 P 927 (1917), *reh'g den*, 171 P 193 (1918); *see Lang*, 173 Or App at 395 (testimony that a written offer was orally accepted was admissible to show the existence of a contract); *Flegal v. Dowling*, 54 Or 40, 47-48, 102 P 178 (1909) (testimony about the circumstances under which certain writings were executed was admissible to show the relationship between the writings); *see generally Stevens v. Good Samaritan Hosp.*, 264 Or 200, 203, 504 P2d 749 (1972) (The Supreme Court has not applied the statute in a literal manner but instead has "followed well-recognized interpretations of the statute which are not in accord with the literal language."). We apply those well-recognized exceptions in our analysis below.

agreement that is subject to the statute of frauds. We therefore must decide whether defendant was entitled to summary judgment because there was neither a writing sufficient to satisfy the statute nor part performance sufficient to avoid the statute's application.

■       Statute of frauds cases involve questions of law for the court (such as whether a note or memorandum is sufficient to satisfy the statute[3]) and questions of fact (such as whether the plaintiff partially performed the contract so as to remove it from the statute of frauds[4]) or questions of mixed law and fact,[5] which are for the jury with proper instructions from the court. *Krause v. Bell Potato Chip Co.*, 149 Or 388, 393, 39 P2d 363 (1934). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party, defendant here, is entitled to judgment as a matter of law. *See* ORCP 47 C; *Robinson v. Lamb's Wilsonville Thriftway*, 332 Or 453, 455, 31 P3d 421 (2001).

■■       We begin by addressing whether there was written evidence sufficient to satisfy the statute. That question must be distinguished from the quantum of proof that is necessary to prevail on a contract claim; a note or memorandum that sufficiently evidences the existence of an alleged contract to satisfy the statute of frauds may not suffice to prove the other elements necessary to enforce a contract. *See D'Angelo v. Schultz*, 306 Or 504, 506, 760 P2d 866 (1988) ("Whether other legal requirements regarding the formation of contracts have been fulfilled and whether the statute of frauds has been satisfied are two separate issues."). Here, for example, we do not reach the ultimate issue of whether a jury could find by clear and convincing evidence that an oral modification occurred. *See Bennett v. Farmers Ins. Co.*, 332 Or 138, 149, 26 P3d 785 (2001). The only issue presented to the trial court was

---

[3] *See Com. Credit Corp. v. Marden,* 155 Or 29, 39, 62 P2d 573 (1936); *Paragano v. Gray,* 126 Or App 670, 676, 870 P2d 837 (1994).

[4] *See Howland v. Iron Fireman Mfg. Co.,* 188 Or 230, 317, 323, 215 P2d 380 (1950).

[5] *See, e.g., Lang,* 173 Or App at 400 (whether a written offer that had lapsed satisfied the statute of frauds could not be resolved on summary judgment because its sufficiency as a note or memorandum turned on the disputed factual issue of whether the offer was later renewed and accepted).

whether enforcement of the option, as allegedly orally modified, was barred by the statute of frauds, and we confine ourselves to that inquiry.

■        The Supreme Court has held that a written offer containing all the material terms of the contract and signed by the party to be charged constitutes a "note or memorandum" sufficient to satisfy the statute. *Alpha Phi of Sigma Kappa v. Kincaid*, 180 Or 568, 571, 178 P2d 156 (1947). Part of the justification for that rule is that an offer "clearly authenticates the terms on which [the offeror] was willing to make a contract; and it goes so far toward eliminating the danger of successful fraud against [the offeror] that the courts were fully justified in holding it to be a sufficient memorandum":

> "Of course, it is possible for [the offeree] to lie about having accepted. He may possibly have at first rejected, and then attempted to accept after his power had ended. Or, he may have made a counter offer on different terms, that has been accepted by [the offeror]. But the danger of successful fraud of this sort is very slight. [The offeror] has sufficient protection in his own testimony and in the fact that [the offeree] has the burden of proof that he accepted effectively. And at the very worst, [the offeror] will be held to the very terms that he himself proposed."

Arthur Linton Corbin, 2 *Corbin on Contracts* § 503, 713 (1950). This court has gone further and held that even a written offer that has lapsed can satisfy the statute of frauds. *Lang*, 173 Or App at 400. Relying on *Corbin on Contracts*, we held in *Lang* that the lapsed offer satisfied the statute of frauds even though it formed no part of the alleged contract and, indeed, was written months before the parties entered into the alleged contract.

        Although not an offer, the compromise letter satisfies the statute for reasons similar to those applied in *Alpha Phi of Sigma Kappa* and *Lang*. Like the offers in those cases, the compromise letter indicates defendant's willingness to enter into an agreement on certain terms and thereby provides some evidence that the parties in fact did enter into such an agreement. In addition to the letter's opening line,

indicating the "wish to confirm our settlement," plaintiff testified that the letter confirmed an oral agreement, and a stipulated judgment in the ejectment action states that the parties had reached a settlement. Accordingly, the compromise letter may be viewed as a memorandum of an existing agreement and, as such, sufficiently demonstrates the existence of the alleged oral agreement to satisfy the evidentiary requirement of the statute of frauds.[6]

In addition to evidencing the existence of the alleged agreement, the note or memorandum must be subscribed by the party sought to be charged or the party's agent and must evidence the essential terms of the alleged agreement. ORS 41.580(1); *The Oregon Home Builders v. Crowley*, 87 Or 517, 536, 170 P 718 (1917), *reh'g den*, 171 P 214 (1918) (the writing must identify the contracting parties, the subject matter involved, the "terms and conditions of the agreement," and the consideration).

The compromise letter is subscribed by defendant's agent and contains two of the essential terms. First, references to the parties' attorneys, as well as references to plaintiff as "your client," satisfy the requirement that the parties be identified. *See Flegal v. Dowling*, 54 Or 40, 47-48, 102 P 178 (1909) (the note or memorandum need not actually state the parties' names but need show only who the parties are by some reference sufficient to identify them). Second, the consideration for both the modification and the modified option agreement are set forth in the letter: the promise to "file a Stipulated Dismissal" of the ejectment action suffices as consideration for the modification, and the new consideration for the modified option is described as 80 percent of the appraised value.

---

[6] Defendant contends that the fact that plaintiff's attorney did not acknowledge the compromise letter in the manner requested in that letter prevents it from qualifying as a "note or memorandum" sufficient to satisfy the statute, citing *Corbin on Contracts*. *See* Corbin, 2 *Corbin on Contracts* § 503 at 711-12 (explaining that a signed written offer that does *not* specify a particular method of acceptance may qualify as a note or memorandum making the agreement enforceable against the offeror). That logic does not apply to the compromise letter, which does not constitute an offer but rather, by its terms, confirms an existing agreement ("I wish to confirm our settlement.").

Although the letter is signed by defendant's agent and contains sufficient references to the parties and the consideration, it does not sufficiently describe the property or spell out the payment terms for the modified agreement. Plaintiff contends that the original option supplies the requisite written evidence of those remaining terms.

The circumstances here bring into play two rules under which multiple writings may be construed together to satisfy the statute of frauds. The first is that, where one writing contains an ambiguous property description, extrinsic evidence—including other writings but excluding testimony by the parties about their "intentions or negotiations"—is admissible to establish that the description can be said to apply only to one specific, identifiable piece of property. *High v. Davis*, 283 Or 315, 323, 329-30, 584 P2d 725 (1978) (a description in a land sale contract was admissible to explain what was meant by "High Country" in a different contract). In this case, because there is only one parcel that was the subject of dealings between the parties, the only reasonable inference that may be drawn is that the reference to "the property" in the compromise letter is to the same property described more particularly in the original option. The two therefore may be construed together to satisfy the statute of frauds requirement of a written property description.

The lack of any reference to payment terms in the compromise letter—which plaintiff likewise urges can be cured by reference to the payment terms in the original option agreement—brings a second rule into play. If a writing is used to supply rather than to explain a term in another writing, then there must be additional evidence that the parties intended the two writings to be read together. *Flegal*, 54 Or at 49-51; *see generally* Corbin, 2 *Corbin on Contracts* § 512 at 744-49. One document need not expressly incorporate the other by reference if the connection between them is unmistakable:

> "[W]hen all the writings adduced, viewed together in the light of the situation and circumstances of the parties at the time they were written, show unmistakably that they relate to the same matter, and constitute several parts of one connected transaction, so that the mind can come to no other reasonable conclusion from the evidence so offered than

that they were each written with reference to those concurrent and preceding, then there is such a reference of the one to the other as satisfies the rule, although reference in express terms does not appear."

*Flegal*, 54 Or at 50-51 (internal quotation marks omitted). Such "unmistakable" evidence may include testimony about the "circumstances under which the two instruments were executed[ ] and how the parties acted with reference to them after they were executed." *Id.* at 49.

Here, the compromise letter discusses a modification of the price contemplated in the original option, which provided that the purchase price would be $123,000 and that defendant would pay $1,030 per month. That original payment schedule works out to approximately 20 years of payments with an eight percent compound interest rate. Although the alleged modification as described in the compromise letter does not specify an exact price for the property, the compromise letter seems to anticipate a higher purchase price as consideration for defendant's voluntary dismissal of the ejectment action, and the parties both testified that they contemplated that the appraisal would lead to an increase in price. Yet plaintiff contends that, despite the change in purchase price, the payment terms were to remain exactly the same: he contends that he must pay only $1,030 per month, provided that he pays off the entire purchase price by the end of the 20-year payment period. (Plaintiff does *not* contend that we may infer a payment formula from the original option agreement and apply it to the modified agreement.)

Plaintiff asserts that the compromise letter "clearly sets out that the [original option] remains in effect." We disagree. Although the letter refers to that original option, it does not state that the parties intended to modify the price only and to leave intact all the other terms and conditions originally agreed on. Instead, the letter describes a new price term and states that *closing* will be "as set forth in" the original option. But the "closing" terms in the original option were distinct from those detailing the form of sale, payment schedule and amounts, and interest rates. Because those terms are not explicitly incorporated into the compromise letter, plaintiff was required to produce unmistakable evidence

that the parties intended the writings to be read together to include those essential payment terms. *Cf. Ford v. Blinn*, 50 Or App 515, 519, 623 P2d 1110, *rev den*, 290 Or 853 (1981) (for specific enforcement, payment terms are essential if the sale is not for cash).

The only evidence that the parties agreed to retain the payment terms in the original option despite the change in the price term is plaintiff's testimony by affidavit that "[a]ll other terms of the [original option], except for the purchase price, remained unchanged * * *." That testimony is admissible to show that the parties intended the two documents to be considered together, *Flegal*, 54 Or at 49; whether it may constitute "unmistakable" evidence that the parties had such an intent is a question of fact that turns on plaintiff's credibility. Defendant argues quite persuasively that the parties could not have so intended because such an agreement would have been economically disadvantageous to defendant. However, that argument and evidence supporting it must be addressed to the factfinder at trial. Plaintiff's testimony that the parties intended to retain the original payment terms raises a genuine issue about whether the compromise letter and the original option may be construed together to satisfy the statute of frauds. Accordingly, the trial court erred in resolving that issue on summary judgment.

■ We proceed to address part performance, because our resolution of that issue will affect the proceedings on remand. The doctrine of part performance includes both an evidentiary and a reliance element:

> "[T]he terms of an oral agreement will be enforced (1) if there is conduct corroborating and unequivocally referable to the oral agreement sufficient to satisfy the policy of the statute designed to minimize perjured claims and the opportunities for fraud, and (2) if there are equitable grounds for enforcing the contract whether those grounds are found in facts establishing the basis for a true estoppel or in facts justifying the avoidance of unjust enrichment or relief from fraud."

*Luckey*, 217 Or at 633.

■ Plaintiff asserts that the undisputed facts establish that the following conduct was unequivocally referable to the

alleged oral agreement and created equitable grounds for enforcing it: (1) defendant dismissed the ejectment action; (2) the parties hired an appraiser to value the property; (3) plaintiff tendered $5,000 to defendant to exercise the option, as required under the original option agreement; (4) plaintiff tendered and defendant accepted at least one of three monthly payments to defendant of $1,030, as contemplated by the original agreement.

Even if we were to agree that this conduct was unequivocally referable to the alleged oral agreement, none of the alleged facts establish equitable grounds for enforcement. The fact that defendant dismissed his action against plaintiff was in no way detrimental to plaintiff; indeed, it benefitted him. Likewise, plaintiff did not incur a detriment by jointly hiring an appraiser, because the parties cancelled the appraisal before it was performed and plaintiff never paid a cancellation fee.[7] Defendant refused to accept the $5,000 down payment and one or more of the three monthly payments, and any he did accept were substantially less than the fair rental value of the property, which, as the lease reflects, was $2,000. Defendant therefore was not unjustly enriched by those payments, nor did plaintiff make them in reliance on the modified option. Defendant informed plaintiff that he considered plaintiff a holdover tenant and viewed the checks as inadequate rent, yet plaintiff continued to make those payments. Consequently, there was no partial performance by plaintiff sufficient to remove the alleged oral agreement from the statute of frauds. If plaintiff is to prevail on the statute of frauds issue, it must be on the question of the sufficiency of the writings.

On appeal, reversed and remanded; cross-appeal dismissed as moot.

---

[7] The parties did rehire the appraiser, pursuant to the settlement negotiations, after this litigation began. They agreed, however, that that step would not be used to prejudice either party, and we will not consider any of the evidence that plaintiff has offered regarding that appraisal.